### 17641

Charles Collins HUCKS, Plaintiff-Respondent, v. Rufus Leroy SELLARS and W. A. Sellars, Defendants-Appellants

(113 S. E. (2d) 753)

240

*Messrs. Burroughs & Green,* of Conway, *for Appellants,*

*Messrs. Suggs & McCutcheon,* of Conway, *for Respondent,*

April 11, 1960.

LEGGE, Justice.

This is an action for personal injuries sustained by the plaintiff as the result of a collision on a highway in Horry County between his automobile, which he was driving, and the defendants' stake-body pick-up truck, which he was attempting to pass. The trial resulted in a verdict for the plaintiff in the amount of $3,700.00 actual damages. In their appeal, defendants charge (Exceptions 1 and 2) that the trial Judge erred in denying their motions for directed verdict and for judgment *n. o. v.,* "because the only reasonable inference to be drawn from all the testimony was that the plaintiff was driving to the left side of the roadway when approaching within one hundred feet of or traversing an intersection at the time of the collision and was therefore guilty of contributory negligence as a matter of law." Exception 3, which suggested that the amount of the verdict evidenced prejudice and caprice on the part of the jury, has not been argued, and is therefore deemed to have been

abandoned. Rule 8, Section 2; *Saxon v. Saxon,* 231 S. C. 378, 98 S. E. (2d) 803; *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873.

The accident occurred about six o'clock in the afternoon of May 2, 1957, on U. S. Highway 501, about three miles west of the city of Conway. The weather was clear and dry, and the sun was shining. Plaintiff's automobile was the rearmost of three vehicles, all proceeding westward. Ahead of it was a pick-up truck belonging to Mr. Ingle, a contractor. It was occupied by him and his helper, Willie Taylor, who was driving. Ahead of the Ingle truck was that of the defendant W. A. Sellars, which his son, the defendant Rufus Sellars, was driving. On the seat with Rufus were his father and his sister, Mrs. Jordan, who was sitting between them.

The home of Mr. W. A. Sellars and his daughter, Mrs. Jordan, is about half a mile from U. S. Highway 501, on an unpaved public road that enters that highway from the south, some three miles west of Conway. Rufus Sellars was driving them home when the accident occurred. Ingle was on his way from Myrtle Beach to his home in Florence. Plaintiff lived on a farm on Highway 501, about nine miles west of Conway. He had finished his work, in Conway, at five-thirty that afternoon and had stopped at his father's house in Conway to pick up some potato plants and a lawn mower; whether or not he, too, was on his way home is not revealed in the record before us.

Plaintiff, who was alone in his car, testified that there was a curve in Highway 501 which he guessed to be about five hundred yards east of the side road before mentioned; that just around the curve (as he was traveling west) there was a drive-in theater; that approximately halfway between the west end of the curve and the aforesaid side road there was a junk yard; that after he had rounded the curve, and before he reached the theater, he saw two trucks ahead of him, about opposite the junk yard, proceeding in the same direction that he was; that his speed at that time was between fifty

and fifty-five miles per hour; that the trucks were "going slow"; that he slowed to about forty miles per hour as he came up behind them; that before attempting to pass them he pulled over to the center line and looked ahead and saw that the way was clear, and that he also looked in his rear-view mirror and saw no traffic behind him; that at that time he was about two car lengths behind the nearer of the two trucks, and both trucks were in the right lane and approximately a car length apart; that no signal was given from either truck; that he proceeded to pull over into the left lane to pass them; that as he started around them they were half-way between the junk yard and the side road; that he did pass the rearmost truck, and was about to pass the other when it began to pull over to the left lane; that he blew his horn and pulled over to the left, putting the left wheels of his car on the dirt shoulder; and that the truck continued to bear to the left, and its left front fender struck his right front fender, the impact throwing him down in the seat and knocking his car off its course "about fifteen degrees to the left" and "off to the side of the road and across a dirt road there into a big oak tree." (A photograph in evidence shows the oak tree a few feet south of Highway 501 and about the same distance west of the unpaved side road. It also reveals, and there is no suggestion to the contrary in the record, that on Highway 501 in the vicinity of the side road there is a broken white center-line, but no sign-post, solid center-line, or other warning marker indicating the junction of the side road.) Plaintiff testified that he had traveled that portion of Highway 501 many times and knew the location of the side road.

Rufus Sellars testified on direct examination that when he first saw the Ingle truck behind him he was approximately fifty yards beyond the entrance to the drive-in theater and about opposite the near corner of the junk yard, which was on the other side of the highway; that at this point he was "a hundred feet or above", or "at least fifty yards", from the side road; that he pulled close to the center line and gave

a hand signal for a left turn, and the Ingle truck slowed down. As to the plaintiff's car he said: "I didn't see the car. The first I knew anything about it was the front wheels of the truck that I was driving was approximately eighteen inches up on the highway like, just about eighteen inches off the highway when the collision occurred—when they hit together." He did not hear any horn blow "until it hit together. It was just about the same sound." On cross examination he testified that the distance between the drive-in theater and the point where the collision occurred was approximately one hundred and twenty-five yards; that when he first gave his hand signal he was approximately fifty or sixty yards from the side road; that his speed then was approximately forty miles an hour; that he then slowed to ten or fifteen miles per hour, at which speed he traveled approximately ten or twelve yards; and that he was on his side of the road until he got approximately ten feet from the side road, at which point he started to turn left and pulled in his arm, with which he had been signalling.

Mr. W. A. Sellars estimated the distance from the drive-in theater to the side road at a quarter of a mile, more or less. He testified that when the truck was "maybe a hundred foot" from the side road Rufus rolled down the window and gave a hand signal; that he did not see plaintiff's car until after it had come to rest against the oak tree; that after the collision the Sellers truck, out of control, crossed the highway and a ditch and struck a fence; and that a bag of "biddy feed" in the truck had fallen out on the dirt road after the collision.

Mrs. Jordan testified that Rufus rolled down the window and put his hand out, but she was unable to say where the truck was then with reference to the side road. She did not see the Ingle truck at any time. She heard plaintiff's horn about the time of the collision, but didn't see his car until it had struck the oak tree. On cross examination she admitted that she didn't know exactly what had happened.

Willie Taylor, driving the Ingle truck, testified that he saw Sellars' hand signal and slowed to about forty miles an hour;

that he could not say how far from the side road Sellars was when he pulled his hand in; that he was watching the Sellars truck and did not see plaintiff's car until just before the accident; and that he "guessed" that the Sellars truck was about fifty feet from the side road when it turned across the center line.

Mr. Ingle testified that when his truck rounded the curve at the drive-in theater, at a speed of about sixty miles per hour, the Sellars truck, half-way between the theater and the side road, and some three or four hundred feet from the latter, was in the act of crossing the center line, "leading out to the left all the time", and its driver was holding out his arm and waving vigorously; that he (Ingle) told his driver (Taylor) to slow down; that he did not know how far from the side road the Sellars truck was when he last saw its driver's signal; that the Sellars truck traveled some three hundred feet in the left lane; that when he saw that it was "fixing definitely" to turn to the left he told Taylor to go ahead, and then, as he reached into the glove compartment he heard a horn blow and looked up as the collision occurred; and that the Ingle truck at that time was "maybe" fifty feet behind the Sellars truck.

This appeal is rested upon the single ground that the evidence shows, to the exclusion of any other reasonable inference, that at the time of the collision respondent was driving to the left side of the roadway when approaching within one hundred feet of or traversing an intersection, in violation of Section 46-388(2) of the 1952 Code.

Conflict between the testimony of the plaintiff and ■ that of the defendants is apparent from the foregoing review of it. That of the plaintiff is not very specific or convincing as to just where the two vehicles came into contact; but viewed, as it must be, in the light most favorable to his case, it seems to us suspectible of the inference that his car was in the act of passing the Sellars truck, and would have passed it, at a distance of more than one hundred feet

from the junction of the side road, had not the truck borne to the left and struck it. There was in evidence no plat against which the witnesses' varying ideas or guesses as to the location of, and distance between, landmarks such as the curve, the drivin-in theater, the junk yard, and the side road, might have been testified in the course of their examination. There was no testimony as to marks or debris on the highway fixing the point at which the collision occurred. And the only photograph in the record before us, a general representation of the area at and near the junction of Highway 501 and the side road, is supported by no specific testimony as to measurements and distances.

The case at bar is readily distinguished from *Sewell v. Hyder,* 229 S. C. 480, 93 S. E. (2d) 637, upon which appellants rely. There the driver of the overtaking vehicle admitted that he was within the prohibited distance of the intersection when he attempted to pass the other vehicle. Comparable admissions in *Sanders v. State Highway Department,* 212 S. C. 224, 47 S. E. (2d) 306, and in *Reese v. National Surety Corp.,* 224 S. C. 489, 80 S. E. (2d) 47, distinguish this case from those.

Under the testimony to which we have referred, we think that the trial Judge properly submitted the issue of contributory negligence to the jury.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and Moss. JJ., concur.