Grafton,
No. 5907.

ROBERT KEENEY

*v.*

LAURIS E. AVERY.

Argued May 7, 1969.
Decided October 31, 1969.

*Batchelder & Murphy* (*Mr. Walter L. Murphy* orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *William S. Orcutt* (*Mr. Orcutt* orally), for the defendant.

DUNCAN, J. This is an action of case to recover damages for personal injuries suffered by the plaintiff in Ashland on July 18, 1966 when a passenger vehicle which he was operating was in collision with a dump truck operated by the defendant's agent. There was a trial by jury with a view, and a verdict was returned for the plaintiff. The defendant seasonably excepted to the denial of his motions for nonsuit and directed verdict and other rulings of the Trial Court. Questions of law so presented were reserved and transferred by the Presiding Justice (*Keller,* J.)

The collision occurred as the plaintiff undertook to pass the defendant's truck while both vehicles were travelling north on Route 3. The plaintiff had entered the highway from Interstate 93, overtook the truck just beyond the end of a curve in the highway, and undertook to pass it. As his vehicle came up beside the truck, the operator of the truck commenced a left-hand turn into a road which intersected Route 3 at an angle from the northwest. The sides of the two vehicles were in collision, and they finally came to a stop a short distance into the intersecting road. There were tire marks leading up to where the truck stopped, and the plaintiff testified that his vehicle had made the tire marks in the southbound lane on Route 3 which were some 80 feet in length, leading to the entrance of the intersecting road.

The sole issue for the determination of this court is whether the Trial Court erred in denying the defendant's motions for nonsuit and directed verdict. It is familiar doctrine that this determination is to be made upon the evidence construed most favorably to the plaintiff. *Scahill* v. *Jabre,* 101 N. H. 263, 265.

The evidence warranted the jury in finding that the intersecting road into which the defendant's agent started to turn was three-tenths of a mile north of a curve just above where the plaintiff entered Route 3. It could find that the plaintiff commenced to pass as he left the curve. This was at the point where the broken white line in the center of the road commenced. The plaintiff was then about 80 feet south of the truck. The truck was travelling at a speed of 40 miles an hour and the plaintiff accelerated to a speed of about 45 miles an hour. The operator of the truck gave no signal indicating a purpose to turn which was visible

to the plaintiff, but as the front of the plaintiff's vehicle came opposite the running board and saddle tank of the truck, the truck "began making an improper turn considerably back from the entrance to the [intersecting road]." The vehicles collided in such a way that two of the plaintiff's wheels were elevated "for a considerable distance." The vehicles then separated, and again collided, with the side of the plaintiff's vehicle opposite the driver's side up against the forward dual wheels of the truck. The collision threw the plaintiff about in the driver's seat.

The defendant maintains that the Trial Court erred in submitting the issue of contributory negligence to the jury. He takes the position that the evidence conclusively demonstrated that the plaintiff violated RSA 262-A:20 A, II which provides that "no vehicle shall at any time be driven to the left side of the roadway . . . when approaching within one hundred feet of . . . any intersection"; as well as RSA 262-A:54 III providing that no person shall drive at a speed which is greater than reasonable or prudent [subsection I], and consistently with those requirements shall "drive at an appropriate reduced speed when approaching and crossing an intersection . . . ."

The case thus resolves itself into a question of whether the jury could find that the plaintiff was not chargeable with legal fault for driving his vehicle to the left side of the road, or accelerating his speed, when approaching within 100 feet of the intersection. We cannot say upon the record before us that the jury could not so find.

It could find from the plaintiff's testimony that he commenced to pass as he entered the straightaway where the broken white center line commenced, a little under 1600 feet from the intersection. See RSA 262-A:21. If it so found, then we cannot say upon this record that it could not likewise find that there was no causal violation of the statute. See *Lynch* v. *Bissell,* 99 N. H. 473, 477. To state the matter affirmatively, the jury could find that the collision caused the statute to be violated, rather than that any violation caused the collision. Unlike the section which precedes it (RSA 262-A:19), RSA 262-A:20 contains no provision prescribing when or where the passing vehicle shall "return to an authorized lane of travel." The plain implication of section 20, however, is that the passing driver approaching an intersection shall not drive to the left side of the roadway, unless it will be reasonably possible for him to return to the right-hand

side while he is still more than 100 feet from the intersection. Otherwise he cannot expect to avoid violation of the statute.

If the plaintiff commenced to pass when he was nearly 1600 feet south of the intersection, his legal fault would not have been a compelled finding, since it could be found that his failure to seasonably return to the right-hand lane was due to conduct of the defendant's driver which was beyond the plaintiff's control. *MacDonald* v. *Appleyard,* 94 N. H. 362, 365; *Lynch* v. *Bissell, supra.*

The defendant in support of his argument relies upon authorities from other jurisdictions holding under similar statutes that a passing driver who was in collision with a left-turning vehicle within 100 feet of an intersection was guilty of contributory negligence as a matter of law. *Bale* v. *Perryman,* 85 Idaho 435; *Garnett* v. *Hicks,* (Ky. App.), 333 S.W. 2d 509; *Harbert* v. *Mathis* (Tex. Civ. App.), 230 S.W. 2d 380. In *Bale* v. *Perryman, supra,* the plaintiff undertook to pass within 100 to 150 feet from the intersection. In *Garnett* v. *Hicks, supra,* he was within the 100-foot limit when he commenced to pass. In *Harbert* v. *Mathis, supra,* he "began his attempt to pass . . . as far as 115 feet from the intersection." *Id.,* 382. The undisputed circumstances of the cited cases distinguish them from the case at bar.

In the case before us, the evidence as to the point of collision was such that its location with reference to the 100-foot limit cannot be accurately determined from the record. It could be found from the plaintiff's testimony that it was a "considerable distance" south of the intersection, and more than 250 feet therefrom, and that the first impact occurred "a considerable distance" south of the second and final impact. At the trial, the jury had the benefit of a view, and of a blackboard diagram not available to this court, by which the witnesses illustrated their testimony. Thus the case more closely resembles cases such as *Hucks* v. *Sellars,* 236 S.C. 239, 244, 245, where the issue of the plaintiff's negligence was held to be for the jury. There the court said that, viewing the evidence most favorably to the plaintiff, "it seems to us susceptible of the inference that his car was in the act of passing the . . . truck, and would have passed it, at a distance of more than one hundred feet from the junction of the side road, had not the truck borne to the left and struck it." In that case, as in this, there was no plan of the scene of the accident upon which landmarks could be located or distances tested.

We hold that the issue of the plaintiff's fault was properly submitted to the jury. *Hucks* v. *Sellars, supra; Hamblen* v. *Kazlauski,* 259 F. 2d 754, 757 (7th Cir., 1958). See *Faucette* v. *Christensen,* 145 Mont. 28. There was no error in the denial of the motions for nonsuit and directed verdict.

*Judgment on the verdict.*

All concurred.