DOROTHY M. LEACH, AND MICHAEL JAMES LEACH, INFANT, AND DEBORAH LOUISE LEACH, INFANT, BY AND THROUGH DOROTHY M. LEACH, AS GUARDIAN AD LITEM OF SAID INFANTS, HEIRS OF ARTHUR J. LEACH, DECEASED, PLAINTIFFS AND APPELLANTS, v. GREAT NORTHERN RAILWAY COMPANY, A MINNESOTA CORPORATION, CHARLES A. SANDERS, AND OLE S. GUNDERSON, DEFENDANTS AND RESPONDENTS.

No. 9980.
Submitted November 2, 1960. Decided February 6, 1961.
Rehearing denied March 28, 1961.
360 P.2d 94.

Floyd O. Small, Myles J. Thomas, Helena, argued orally for appellants.

Weir, Gough, Booth & Burke, Helena, for respondents.

Edwin S. Booth, Helena, argued orally.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the first judicial district, Lewis and Clark County, the Honorable William F. Shallenberger, Judge, presiding, entered pursuant to a jury verdict in favor of defendants in an action for damages for the wrongful death of Arthur J. Leach.

Appellants, plaintiffs below, are the widow and two children of Arthur J. Leach, deceased. This action was prosecuted in the district court to recover for the death of Arthur, who, while working on state highway snow removal equipment in Lewis and Clark County, was run over and killed by a Great Northern Railway Company tractor and trailer transport, driven and operated by defendant, Charles A. Sanders. One Ole S. Gunderson, who happened upon the scene of the accident operating his own car, was made a party defendant in the district court; no appeal was taken from the jury verdict in his favor and the present appeal is taken by appellants against defendants, Great Northern and Sanders, only.

On May 3, 1956, Arthur Leach, age 29, was working as a highway maintenance man for the State of Montana, and had

been continuously engaged in such work for several years and had had a great deal of experience in all kinds of highway maintenance work, including snow removal and sanding of ice or snow-covered highways.

On the night of May 3, 1956, Leach and a fellow worker, one Francis O'Leary, had been directed by their supervisor to take a state highway maintenance truck and remove snow from, and sand a portion of highway No. 91, approximately fourteen miles north of Helena, Montana, which portion of said highway is generally referred to, and will hereinafter be referred to as the ''North Hill''. The highway maintenance truck had a snow plow mounted on the front, and the bed of the truck contained a load of sand for sanding the highway.

The portion of the highway involved in the instant case, the North Hill, extended in a northerly-southerly direction from Great Falls, Montana, to Helena. On the north side of the North Hill the highway goes down a long fairly steep grade and around a long right-hand curve. A short distance north of the sharpest point in the curve, in excess of 200 feet, there was located on the westerly side, or left-hand side as one is driving toward Great Falls, an established turn-out known as the Synness approach. At this point, an old dirt road enters the highway. This dirt road will be hereinafter referred to as the ''Synness Road''. There are no signs in the area indicating that a road enters the highway at this point.

On the evening in question, Leach and O'Leary had cleaned snow and sanded over the North Hill a couple of times. As was customary in the performance of such work, one person would drive the truck while the other would stand in the back and shovel sand on the highway. About 11:00 p.m., on May 3, 1956, O'Leary was driving the highway maintenance truck and Leach was in the back shoveling sand onto the highway; they were proceeding down the north side of the North Hill in the direction of Great Falls. Leach had told O'Leary to turn left onto the Synness Road when they reached the ap-

proach. The highway truck was proceeding down the hill at about seven miles per hour and straddling the center line. It had a blue flashing light on the top of its cab which was operating at the time. A light snow was falling but the visibility was good. Defendant, Charles A. Sanders, an employee of defendant, Great Northern Railway Company, was operating a Great Northern transport outfit, consisting of a tractor and a thirty-five foot trailer, hauling a full load, the over-all weight of the loaded transport outfit being in excess of 60,000 pounds, and proceeding along highway No. 91, north from Helena to Great Falls on the evening of May 3, 1956. As he proceeded down the north side of the North Hill, at a speed of about twenty miles per hour, Sanders saw the highway maintenance truck proceeding ahead of him and in the same direction. The highway truck was about 500 or 600 yards ahead of Sanders when he first saw the blue flashing light on top of its cab. The highway truck had not yet reached the Synness Road. Because of the difference in the speed of the vehicles, the Great Northern transport gained rapidly on the highway truck as both vehicles neared the Synness Road. Sanders did not slow down, nor even attempt to slow down.

Sanders testified that he would have more control over the vehicle on the hill if he maintained his speed at about twenty miles per hour than if he were descending the grade at a slower speed. Sanders stated that he saw Leach shoveling sand on the highway as the transport neared the highway truck. O'Leary observed the lights of the approaching Great Northern transport in his rear-view mirror for the first time when the transport was a considerable distance behind him. O'Leary turned on the highway truck's left-turn signal when he was about sixty feet from the Synness Road. Sanders said he did not see any signal, but he did say that it could have been flashing. When Sanders reached the sharpest point in the curve, at which time he was within a couple of hundred feet of the highway truck he turned the Great Northern outfit

over onto his left side (westerly) of the highway preparatory to passing the highway truck. Sanders did not sound his horn, but did blink his spotlight twice, indicating his intention to pass.

O'Leary testified that he did not see the blinking of the spotlight as the highway truck reached a point in the highway adjacent to the Synness Road, O'Leary noticed that the vehicle behind him was getting quite close. Sanders estimated that his outfit was about 100 feet from the highway truck when the highway truck commenced its left turn. O'Leary did not realize the vehicle behind him was attempting to pass him on his left side; as he made the left turn onto the Synness Road, O'Leary increased the speed of the highway truck slightly in order to get out of the way of the vehicle behind him and avoid being struck by it. When Sanders noticed that the truck was making a left-hand turn, he guided the transport back onto the right side of the highway with the intention of continuing on down his proper lane of traffic after the highway truck turned off the highway. Sanders made no attempt to slow down because he felt the highway truck would be out of the way in time. While the highway truck was in the process of turning off the highway, Arthur Leach fell from the rear end thereof onto the middle of the north-bound traffic lane and the Great Northern transport hit and ran over him. Sanders testified that he saw Leach fall, but that he was only fifteen feet away at the time and he could not avoid running over him. Sanders brought his vehicle to rest on the side of the highway, but not until he had traveled about one hundred and sixty feet further down the road. Sanders got out of his cab and ran back to the highway truck after stopping. O'Leary, who was unaware of what had happened, was just getting out of the highway truck as Sanders reached it. Sanders informed O'Leary that a man had fallen off the truck and that he, Sanders, had run over him. Neither Sanders nor O'Leary touched Leach's body; instead, they set out reflectors

to the north of the scene and to the south thereof and proceeded to guide traffic around Arthur Leach's body while a passing motorist was being sent to Helena to call an ambulance. Some twenty or thirty minutes later, while Leach's body was still lying on the highway, defendant Gunderson, driving north from Helena to Great Falls, hit and ran over Leach's body. However, as the evidence at the trial conclusively showed that Leach was already dead before Gunderson hit him, appellants do not urge the present appeal against Gunderson.

Plaintiffs, by their complaint, charged defendant Sanders and defendant Great Northern Railway Company with twelve acts of negligence. Defendants Sanders and Great Northern answered generally denying the allegations of negligence contained in the complaint; their answer also set forth three affirmative defenses. One, that Arthur Leach's death was the sole proximate result of his own carelessness and negligence. Two, that Leach's death was the proximate result of his own contributory negligence. Three, that Leach had assumed the risks incident to his job, and therefore, defendants could not be held liable for his death. Plaintiffs moved to strike defendants' second affirmative defense, the defense of contributory negligence. The motion was denied. Plaintiffs also filed a demurrer to the answer, which demurrer was overruled.

The cause came on for hearing before the district court and a jury. Plaintiffs again moved to strike defendants' second affirmative defense. This motion was denied, and prior to the taking of any testimony, plaintiffs objected to the introduction of any evidence on the question of contributory negligence.

Appellants' brief contains twenty-one specifications of error.

By far the most serious specification of error, and the one which is primarily the basis of our remanding the cause for retrial, is appellants' contention that the court committed error in submitting the following instruction to the jury:

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it

was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence.

"Even if such an accident could have been avoided by the use of greater foresight, caution or skill than was required in the circumstances in the exercise of ordinary care, still, no one may be held liable for injuries resulting from it.

"Bear in mind, however, that if any defendant failed to exercise care, and if that failure was a proximate cause of the accident in question, then, whether or not such conduct was the sole cause, the accident was not unavoidable, and the defense of unavoidability may not be maintained by that defendant.

"Whether or not the accident in question in this case was unavoidable is, of course, a question of fact for you to determine; and in giving the foregoing instruction I do not imply any opinion or suggestion as to what your finding should be."

Whether it is proper to instruct the jury on unavoidable accident was considered by this court in the recent case of Rodoni v. Hoskin, 138 Mont. 164, 355 P.2d 296, 298. This court, speaking through Mr. Justice Castles, said:

"Montana has decided three cases concerning the problem of 'unavoidable accident' instructions. In Tanner v. Smith, 97 Mont. 229, 33 P.2d 547, and Jewett v. Gleason, 104 Mont. 63, 65 P.2d 3, the Montana Supreme Court held that the *failure to instruct* as to 'unavoidable accident' was not reversible error on appeal by the defendants since the evidence in the cases did not warrant the instruction. In Bogovich v. Scandrett, 117 Mont. 341, 158 P.2d 637, the Montana Supreme Court held that *it was error* for the trial court to give an instruction concerning 'unavoidable accident' when it was not warranted by the evidence in the case. However, it should be noted that in all three of these cases the court intimated that in a proper case an instruction as to 'unavoidable accident' would not be error."

The court, in the Rodoni case, concluded that an instruction concerning "unavoidable accident" was not appropriate in that case, noting that there was ample testimony from which negligence could be inferred on the part of the defendant.

From a perusal of the above quotation, and the holding in the Rodoni case, it is to be noted that an "unavoidable accident" instruction is proper in any particular case, only if it is warranted by the evidence.

This same premise is advanced in 65 A.L.R.2d 1, which is an extended annotation concerning unavoidable accident instructions, wherein it states at page 32: "Clearly, in order to give foundation for any sort of 'accident' instruction * * * there must be in the record evidence which would give legal support to a finding that the occurrence complained of was of the nature indicated by the instruction."

"The difficult question is what in particular instances constitutes the essential evidentiary foundation for the instruction, and clearly this is the principal problem of the cases." 65 A.L.R.2d 1, 36.

The necessary evidentiary foundation is lacking if there was evidence from which the jury could infer negligence on the part of the defendant.

In the instant case, there was ample evidence from which the jury could infer negligence on the part of Sanders. Sanders admitted that he recognized the blue flashing light on the top of the highway truck as a danger signal; that it meant there was highway snow removal equipment working on the highway ahead of him; and that such snow removal equipment might be moving back and forth across the road. In spite of this, and although he was operating a large truck with an overall weight in excess of 60,000 pounds and proceeding around a curve and down grade on a wet highway, Sanders drove his outfit onto the left side of the road and without reducing his speed, started to pass on the left side of the highway truck. Sanders testified that he was thoroughly

familiar with the highway in that area and that he knew where the Synness approach was. If Sanders had observed the left-turn signals flashing on the highway truck, he would not have attempted such a maneuver. In failing to observe the turn signal and proceeding as he did, Sanders came within fifteen feet of the highway truck at which time Leach fell therefrom.

It was reversible error for the district court to submit an unavoidable accident instruction to the jury over plaintiffs' objection.

Appellants next contend that the district court committed error in submitting instructions on contributory negligence to the jury. They claim defendants' (Sanders and the Great Northern Ry. Co.) second affirmative defense was not a proper pleading of contributory negligence, and that plaintiffs' own case did not raise a presumption of contributory negligence. Suffice it to say that defendants' second affirmative defense, contained in their answer, was not a model of good pleading, and such was admitted by counsel for defendants in oral argument. In view of the fact that this cause is being sent back for retrial, counsel for defendants will undoubtedly amend their pleading to meet the objections raised by plaintiffs, so we do not deem it necessary to discuss this contention herein. In this connection the answer of defendant Gunderson did properly plead contributory negligence.

Appellants also contend the district court committed error in submitting the following instruction to the jury over their objection: "When it appears that the conduct of two or more persons, acting independently and at different times, created or contributed to the circumstances out of which injury resulted, the question of proximate or remote cause requires the jury to consider thoughtfully the relationship between the conduct of one person, whom, for convenience, I shall call the original actor; the conduct of another, whom I shall call the secondary actor; and the sequence of events leading to the injury.

"It is not enough merely to say that the accident would not have happened had it not been for what was done or was not done by one of the parties. It may or may not be that the effect which ordinarily would have been expected to flow from certain conduct was changed by what we call an efficient intervening cause.

"Of course, the first question to be answered is whether either of the parties was negligent. If either party was not negligent, then he may not be held liable even if his conduct was a proximate cause of the accident. If the original actor was not negligent, but the secondary actor was, the question narrows down to whether that secondary conduct was a proximate cause of injury. There remains, of course, the question of contributory negligence.

"If the original actor was negligent, then you have to consider whether the effect reasonably to be expected from that negligence was altered by an efficient intervening cause. Was the conduct of the secondary actor an efficient intervening agency which alone was the proximate cause of the injury? Or was that later conduct merely a concurring cause, and the conduct of each actor a proximate cause of the injury?

"As between those two possibilities, the test is this: If the original actor foresaw, or by exercising ordinary care would have foreseen, the probability of the conduct of the secondary actor and the probability that the original conduct plus the secondary conduct would result in injury to a third person, then the conduct of both the original and the secondary actors concurred in proximately causing that injury. But if those probable results were not thus foreseen or foreseeable, and if the immediate cause of the injury was the conduct of the secondary actor, then it may not be held that the conduct of the original actor was a proximate cause."

To say the least, this instruction is vague, confusing and ambiguous. For example, in such instruction, the district court refers to an "original actor", and to a "secondary actor",

but it is virtually impossible to determine therefrom who might be considered the "original actor", or the "secondary actor". Is the "original actor" Great Northern Railway Company, Sanders, Arthur Leach, O'Leary, or Gunderson? Similarly we might inquire, who was the "secondary actor". Manifestly, such ambiguity and confusion could do nothing more than mislead and confuse the jury.

Appellants contend that the district court erred in denying their offer to prove that the Synness Road was a public road, and as such it constituted, at its *intersection* with highway No. 91, a point where; pursuant to section 32-2156, R.C.M. 1947, it was improper for defendant Sanders to attempt to pass the highway truck.

Section 32-2115, R.C.M.1947, defines intersection as follows:

"(a) The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two (2) *highways* which join one another * * *." Emphasis supplied.

Section 32-2114, R.C.M.1947 (section 14, Ch. 263, Laws of 1955), as it read when the incident in the instant case occurred, defined *highway* as follows:

"The entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for the purpose of vehicular travel." Emphasis supplied.

Appellants offered to prove that the Synness Road was open for use, and used by, the public, but they did not anywhere attempt to prove that the Synness Road was a publicly maintained road, and this is an essential part of the definition of highway.

An intersection, within the meaning of section 32-2156, R.C.M.1947, is formed by the joining of two ways *publicly maintained* which are open to the public for vehicular travel. As far as the record goes in this case, the Synness Road might be a road on private land.

■ The district court did not commit error in denying appellants' offer of proof, because even if such proof were allowed, it would not show that Sanders had violated section 32-2156, R.C.M. 1947.

Since the matters involved in the other specifications of error are not likely to arise upon a new trial, no purpose would be served by discussing them herein.

For the reasons noted, the judgment is reversed and the cause remanded for a new trial.

MR. JUSTICES ADAIR and ANGSTMAN concur.

MR. JUSTICE JOHN C. HARRISON took no part in the oral argument, hearing or determination of this appeal.

MR. JUSTICE CASTLES dissenting.

The fact statement reveals a bizarre situation. In addition to that recited in the majority opinion, it appears that the driver of the highway truck had one arm in a cast. Also the testimony reveals that the transport did not "rapidly" overtake the highway truck. Sanders was driving as any reasonably prudent driver would. He passed behind a left-turning vehicle in his own right-hand lane, as any driver on the streets and highways has done hundreds of times. Leach fell or was thrown from the highway truck across in front of Sanders, from the left lane over into about the center of the right lane. A complete and total surprise! Under this peculiar set of circumstances, I believe the "unavoidable accident" instruction was completely proper, in fact necessary. The majority opinion relies on Rodoni v. Hoskin, 138 Mont. 164, 355 P.2d 296, an opinion written by this writer. First, the instruction in the instant case is different from that in the Rodoni case. The instruction is more complete in that it adds the paragraph: "Bear in mind, however, that if any defendant failed to exercise care, and if that failure was a proximate cause of the accident in question, then, whether or not such

conduct was the sole cause, the accident was not unavoidable, and the defense of unavoidability may not be maintained by that defendant.''

Next, the Rodoni case followed the reasoning of the New Mexico court in Lucero v. Torres, 1960, 67 N.M. 10, 350 P.2d 1028. In that case, the New Mexico court said at page 1031 of 350 P.2d: ''* * * We believe that in a case where the issues of negligence, contributory negligence and unavoidable accident are present, and the evidence being in conflict as to the issue of negligence and contributory negligence, the jury may conceivably find, with evidentiary support, that neither the appellant nor the appellee were negligent. There being questions present for the jury to decide as to whether appellee or appellant were negligent, or whether both or neither were negligent, we believe that in such a case, an unavoidable accident instruction is appropriate.''

And continuing in that opinion, the New Mexico court said:

''We do not mean to say that every motor vehicle accident case warrants the giving of an unavoidable accident instruction. On the other hand, the very nature of some of the motor vehicle cases, such as this, suggests that genuine questions of mere accident or of unavoidable accident, giving foundation for the instruction, may be present. A prominent feature may be one of surprise, sudden appearance and reasonably unanticipated presence of a pedestrian, combined with circumstances which present a fair issue as to whether the failure of a driver of a motor vehicle to anticipate or sooner to guard against the danger or to avoid it, is consistent with a conclusion of the exercise of his due care. In such cases, the trial courts are inclined to grant the instruction on unavoidable accident and their action in so doing is generally approved by the appellate courts. [Citing cases.]''

In the instant case we have exactly the situation referred to in the New Mexico case. Such was not true in the Rodoni case. In the Rodoni case there was no issue of contributory

negligence on the part of the plaintiff and also no evidence except that defendant was negligent. In the Rodoni case we specifically rejected the California case of Butigan v. Yellow Cab Co., 49 Cal.2d 652, 320 P.2d 500, 65 A.L.R.2d 1. The effect of the majority opinion in this case is to overrule the Rodoni case and serve notice that an "unavoidable accident" instruction is improper in any case.

The majority opinion states: "The necessary evidentiary foundation is lacking if there was evidence from which the jury could infer negligence on the part of the defendant." Simply an inference of negligence on the part of the defendant is sufficient? The facts of the Rodoni case were such that there was *only* evidence of negligence on the part of the defendant and none on the part of the plaintiff. Bear in mind, too, that the instruction rejected here had the additional caution previously quoted. If the Rodoni case is interpreted to mean what the majority states above, this writer was guilty of careless opinion writing.

In the instant case the only evidence reveals that there was utter and complete surprise when a body came hurtling through the air in front of the transport. It was as if a car door came open unexpectedly and a person fell into the opposite lane of traffic. Utter surprise, utter unexpectedness, utterly unavoidable so far as the driver of the transport was concerned, except, of course, as the trial court observed in denying the motion for new trial, he could have stayed home in bed!

I believe the majority opinion has missed the mark completely, but it would do no good to further lengthen this dissent by a discussion of the other points. Suffice it to say that the majority opinion has just ruled out in Montana the use of "unavoidable accident" instructions. I think the majority is wrong.