MARIAN FAUCETTE, Plaintiff and Respondent, v. KENNETH CHRISTENSEN, Defendant and Appellant.

No. 10774

Submitted September 18, 1964. Decided March 1, 1965.

400 P.2d 883.

Rockwood & Sykes, Robert C. Sykes (argued), Kalispell, for appellant.

Korn, Warden & Walterskirchen, Merritt N. Warden (argued), Kalispell, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order granting the plaintiff a new trial, after verdict for the defendant, and, limiting the new trial to damages only. (The order granting a new trial also granted it in general terms.) The case arose out of an automobile accident at the junction of the Stillwater Road and U. S. Highway 93 in Flathead County, Montana. The plaintiff, Marian Faucette, was riding as passenger in a car being driven by her husband. They were driving north on Highway 93 approaching the Stillwater Road. The defendant, Kenneth Christensen, was also driving north on the highway and was behind the plaintiff's car. The center of the highway was marked with a broken white line, which in Montana is the usual division mark on two lane paved highways as testified to at the trial. Visibility was excellent and for several hundred yards in each direction of the intersection the road is straight and level. There were no adverse weather conditions

and the road was dry. The accident occurred as plaintiff's husband turned left to go onto the Stillwater Road and was struck by defendant, who was in the process of passing plaintiff's car. The defendant had pulled into the southbound lane to pass at a point more than 100 feet from the intersection, and he had sounded his horn. The evidence is conflicting, but it appears that the jury believed that plaintiff's husband did not signal either by blinker light or by hand that he was about to turn left, and believed further that the plaintiff's husband "short cut" the corner. There is a series of little white post and cable fences marking the intersection. The Stillwater Road is therefore visible, but by no means is it the major thoroughfare that Highway 93 is. Additionally, the plaintiff's husband was hard of hearing. He knew the defendant's car was behind him, but did not check again to see that the way was clear for a left turn. The plaintiff, an elderly woman, was injured in the collision.

This action was brought against the defendant on the grounds that he was negligent as a matter of law in being on the left of the center while within 100 feet of an intersection in violation of section 32-2156, R.C.M.1947, which in relevant part provides:

"(a)  No vehicle shall at any time be driven to the left side of the roadway under the following conditions: * * *

"2.  When approaching within one hundred (100) feet of or traversing any intersection or railroad grade crossing * * *."

Preliminary to trial, defendant's counsel had served notice that exhibits and testimony would be offered to establish that the State Highway Commission had, on February 20, 1962, formally adopted the "Manual on Uniform Traffic Control Devices for Streets and Highways." The purpose was to establish the authority of the Highway Department to mark the highway at the accident scene with a broken white line, and that the legal effect of the broken white line, besides dividing the lanes of traffic, was to indicate a lawful place to pass other

vehicles traveling the same direction; and further that motorists had a right to rely on the markings.

It is seen then, that plaintiff charges negligence in passing at an intersection. Defendant denies negligence because, the "intersection" was not in fact and in law a prohibited place to pass because of the markings of the Highway Department.

The case was tried to a jury, which found for the defendant. The trial judge had instructed the jury that the defendant was negligent per se because he had violated the statute. However, the issue of proximate cause was left to the jury. On motion after verdict for the defendant, the plaintiff urged the trial judge to grant a new trial on the grounds that the proximate cause issue ought to also have been a question of law for the judge. Plaintiff was granted a new trial on the question of damages only, the issues of negligence and proximate cause being deemed settled as a matter of law.

In a memo opinion filed with that order, the trial court felt that the evidence permitted only one inference as to proximate cause, hence, the question was for the court.

In so ruling, the trial court based its action on reasoning expressed as follows:

"The defendant was negligent as a matter of law in driving his automobile to the left of the highway when approaching the junction of the Stillwater Road with the highway on which he was travelling and the Court so instructed the jury. State law prohibits the driving in the passing lane when approaching within 100 feet of a junction or intersection (Sec. 32-2156(a) (2), R.C.M.1947, as amended); the purpose of such state law is for the safety of the public and to reduce accidents caused by one car passing another in the general area of an intersection or road junction. Violation of a state motor vehicle law designed for the safety and protection of the public, constitutes negligence as a matter of law on the part of the violator (Rader v. Nicholls, 140 Mont. 459, 373 P.2d 312, and Montana cases cited therein; Burns v. Fisher, 132 Mont. 26,

313 P.2d 1044, 67 A.L.R. 1, also see Anno: 53 A.L.R.2d 859, for cases so holding in other jurisdictions).

"The negligence of the defendant as indicated above was a proximate cause of any injuries or damages that plaintiff may have suffered. The question of proximate cause is a question of law for the court and not a question of fact for the jury where the material facts are undisputed or where the evidence permits only one inference as to proximate cause. (Rader v. Nicholls, supra, [140 Mont. 459, 373 P.2d 312]; Traylen v. Citraro, 112 Cal.App. 172, 297 P. 649; Valerio v. Jahura [191 Cal.App.2d 159], 12 Cal.Rptr. 296; Muldoon v. Kepner, 141 W.Va. 577, 91 S.E.2d 727). As applied to this case, the undisputed facts plus the controverted evidence and the inferences therefrom viewed in the light most favorable to the defendant do not permit any inference but one, namely, that defendant's negligence was a proximate cause of the accident and any resulting injuries or damages to plaintiff.

"Specifically analyzing the question of proximate cause as applied to this case, it boils down to whether or not the acts or omissions of the driver of the car in which plaintiff was riding constitute an 'efficient intervening cause' between defendant's negligence and any injuries or damages suffered by plaintiff and so breaks the causal chain as to make defendant's negligence a remote cause or circumstance rather than a proximate cause and consequently relieve defendant from liability to plaintiff. The Court is of the opinion that under no view of the evidence could the acts or omissions of the driver of the car in which plaintiff was riding be held to be an 'efficient intervening cause' in the sense of relieving defendant from liability because: (See Restatement, Torts, § 439, 35 Cal.Jur.2d, Negligence § 65, p. 564; 65 C.J.S. Negligence, § 111, p. 693.) (1) The negligence of defendant was continuous up to the time of impact; and (2) the driver of the car in which plaintiff was riding was not actually or constructively aware of the potential danger to plaintiff or of the potential danger of a collision in time to do anything about it."

Defendant appeals from the order granting a new trial, and we shall consider it, in two parts (1) from the order granting a new trial on the issue of damages only; and (2) from the order granting a new trial in any event.

The specifications of error are divided into three groups: The first grouping, dealing with Instructions given, has to do with whether defendant was negligent as a matter of law in attempting to pass while literally "traversing" an "intersection" as set forth heretofore by R.C.M.1947, § 32-2156.

R.C.M.1947, §§ 32-2114 and 32-2115, define intersections, and in Leach v. Great Northern Ry., 139 Mont. 84, 94, 360 P.2d 94, we construed intersection to mean a joining of two ways publicly maintained which are open to the public for vehicular travel. But, R.C.M.1947, §§ 32-2133, 32-2134, and 32-2136, also bear on the matter.

Section 32-2133 provides:

"The State highway commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within the state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American association of state highway officials, provided however, that the commission shall adopt for use on controlled access highways, the interstate sign manual as adopted by the American association of state highway officials, February 10, 1958, and approved by the United States department of commerce, bureau of public roads, February 21, 1958, and all subsequent amendments relating thereto."

Section 32-2134 provides in part:

"(a) The * * * commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state highways as it shall deem necessary to indicate and to carry out the provisions of this act or to regulate, warn, or guide traffic. * * *

"(d) The erection, placement, or maintenance of any sign,

marker, emblem or traffic-control device upon any state highway except a controlled access highway or controlled access facility, shall be subject to the rules, regulations and specifications as the commission shall adopt and publish in the interest of public safety and convenience."

Section 32-2136 provides:

"(a) The driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed in accordance with the provisions of this act, unless otherwise directed by a highway patrolman or police officer, subject to the exceptions granted the driver of an authorized emergency vehicle in this act.

"(b) No provision of this act for which signs are required shall be enforced against an alleged violator if at the time and place of the alleged violation an official sign is not in proper position and sufficiently legible to be seen by an ordinarily observant person. Whenever a particular section does not state the signs are required, such section shall be effective even though no signs are erected or in place."

At the place of the accident here, there was a broken white line, which by authorization of the foregoing statutes and adoption of the Manual on Uniform Traffic Control Devices for Streets and Highways, directed any motorist's attention to an "open" highway situation *for* passing, and directly away from an "intersection" where passing was prohibited by section 32-2156.

The trial court flatly ruled that the passing was prohibited by law and thus was negligence per se. But, was it? Should not the other statutory "rules of the road" and the highway markings formally established by the highway commission under statutory authorization have equal dignity? Should not the statutes, then, be construed together and harmonized in determining questions of negligence? We believe they should.

The specific authority relied upon by plaintiff, respondent

here, and by the district court is Rader v. Nicholls, 140 Mont. 459, 460, 462, 373 P.2d 312, 313, 314. In that case, the situation was expressed:

"* * * Both vehicles were traveling in the same direction; the plaintiff following. Plaintiff's approximate speed was sixty miles per hour; while defendant Nicholls was traveling approximately thirty miles per hour. When the plaintiff was within about one hundred eighty feet from overtaking defendant's truck, he commenced to pass, giving no audible signal by horn or otherwise, and while the plaintiff was in the left-hand lane and in the process of passing, defendant Nicholls signalled and began to execute a left turn. * * *"

The court then went on to say:

"In clear violation of the command of section 32-2156, portions of which are quoted, supra, plaintiff Rader was driving to the left side of the roadway while 'within one hundred (100) feet of or traversing' an intersection; therefore we must examine the consequences of such a violation. In this regard we deem our recent holding in Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044 (1957), relevant and controlling. In the Burns case the deceased, for whose wrongful death the plaintiff administrator was suing, violated the provisions of R.C.M.1947, § 31-108, by failing to put out flares after his truck stalled on the highway at night. That statute like the statute violated by plaintiff Rader in the instant case was enacted to help promote safety on our highways. We held the actions of the deceased in the Burns case to be negligence as a matter of law; hence, his administrator was nonsuited. In view of our holding in Burns v. Fisher, supra, and the fact that we have long been committed to the doctrine that the violation of a statute enacted for the safety of the public is negligence *per se,* (In addition to Burns v. Fisher, supra, see Daly v. Swift & Co., 90 Mont. 52, 300 P. 265 (1931); Stroud v. Chicago, M. & St. P. R. Co., 75 Mont. 384, 243 P. 1089 (1926), to cite only a few.) we are led to the conclusion that if plaintiff had not been passing in a

manner violative of section 32-2156, R.C.M.1947, the collision would not have occurred; hence, by his own case plaintiff proved that his contributory negligence was a proximate cause of the collision.

"Since this ground of the motion for nonsuit was well-taken, no purpose would be served in discussing other contentions of plaintiff."

Thus, then this court held that the showing of a violation of a prohibitory statute was negligence per se and the proximate cause of the collision as a matter of law.

We feel the showing in the Rader case was such as to turn, on the proximate cause, as a matter of law, but it still does not aid our first inquiry here. That is, was there any violation of law in passing here at all? We think not.

We note that in the Leach case, supra, this court in attempting to determine the meaning of "intersection" found that the legislature meant those intersections "publicly maintained." Following the same type of reasoning, we hold that the prohibited intersection for passing under section 32-2156, is that intersection marked by the highway commission as authorized and adopted as heretofore described. Such reasoning gives meaning to all of the statutes heretofore cited and to regulations adopted thereunder.

A somewhat analogous fact situation appears in Cause No. 10450, Campeau v. Lewis, 144 Mont. 543, 398 P.2d 960, decided by this court February 10, 1965. There the leading auto slowed and swung right as if to park. The passing auto, at what we will loosely call an intersection (it included a bridge approach) with a solid, no-passing center-line, attempted to pass with his car drifting over the center line, when suddenly the lead auto turned left across the highway. There, this Court approved of the jury determining the proximate cause of the resulting accident, irrespective of the violation of the "intersection or solid-line violation." There, we looked to proximate cause considering the crossing of the solid line as "evidence of

negligence" but not "negligence or proximate cause as a matter of law." (For a discussion of terminology used by various courts, see Anno. 53 A.L.R.2d 850.) We looked, in the Campeau v. Lewis case, supra, to proximate cause from the standpoint of what a reasonable driver following another might reasonably expect another to do in following the rules of the road.

In the instant situation, a driver can follow the directions of markings and signs, and in doing so is not in violation of section 32-2156.

Having determined that the act of passing was not negligence per se or proximate cause as a matter of law, the problem remains whether or not it was the proximate cause or even a concurring cause. Both appellant and respondent have cited us to numerous authorities in other states. We have examined those authorities but do not consider them applicable here. (But see Holland v. Konda, 142 Mont. 536, 385 P.2d 272.)

In determining that the Manual on Uniform Markings of Streets and Highways, and the existence of the broken white center-line are important here, we acknowledge that the trial court did not admit the Manual as evidence. This is one of the specifications of error, and we hold it to have been error to have refused it. The entire trial was predicated on the ruling of the trial court that the scene of the accident was an "intersection" where passing was prohibited. By what we have hereinbefore stated, the order granting a new trial on the issue of damages only must be reversed.

However, appellant urges that the verdict for defendant should be affirmed and judgment entered accordingly. We hold that the entire matter should be retried, and a new trial had. The motion for new trial was broad and covered almost all of the statutory grounds. In view of the motion, and what appears to us the obvious intent of the trial court in its order granting a new trial, in that in the event the Supreme Court

did not concur with the order limiting the new trial to damages only, then the trial court granted a new trial because of insufficiency of the evidence, and errors at law. The appeal is directed in its entirety to the issue hereinbefore discussed, and thus a new trial is proper in the circumstances; that part of the order and judgment ordering a new trial is affirmed; that part of the order and judgment restricting the issue on a new trial to damages is reversed. It is so ordered, costs to be borne by appellant.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, JOHN CONWAY HARRISON and ADAIR concur.