DARLENE EHNI as Administratrix of the Estate of RICH-
ARD D. EHNI, Deceased, Plaintiff and Appellant, v.
NORTHERN PACIFIC RAILWAY COMPANY, a Wiscon-
sin Corp., Defendant and Third-Party Plaintiff and Re-
spondent, v. MISSOULA WHITE PINE AND SASH COM-
PANY, Third-party Defendant.

No. 11452.
Submitted Nov. 20, 1968.
Decided Feb. 24, 1969.
Rehearing Denied March 12, 1969.
450 P.2d 882.

Loble, Picotte, Loble, Gene A. Picotte, argued, Helena, for appellant.

Boone & Karlberg, Karl Karlberg, argued, Missoula, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by plaintiff from a judgment for defendant in a wrongful death action arising out of an accident at a railroad crossing located on private property. The case was tried by jury in the district court of Missoula County.

The accident in question occurred about 1 a.m. on July 3, 1965, at a private railroad crossing in the lumber yard of the White Pine and Sash Company in Missoula. Richard D. Ehni, an employee of the lumber company, was driving a forklift across the crossing when it was struck by a flatcar at the end of a switch train during switching operations. Ehni was killed instantaneously, leaving his widow and three minor children surviving him.

The testimony concerning the accident is essentially undisputed. The White Pine and Sash Company is engaged in the manufacture of lumber from logs. Its premises are located adjacent to the Northern Pacific Railway yards. The railway yards run generally in an east-west direction and a spur track forks off from these yards onto the White Pine premises. As this spur track reaches the White Pine property, it splits off into four separate tracks which curve into a general north-south direction more or less parallel to each other and some distance apart. The accident in question occurred on the most westerly of these four tracks, hereafter called track No. 4.

Decedent knew that a switch train was on track No. 4 south of the crossing immediately prior to the accident. He was familiar with the layout of the premises, lighting conditions, the crossing, and the lumber piles nearby. It was customary that the switching operations were carried on at night during the shift he worked.

Defendant's switch train consisted of a diesel locomtive, six

boxcars, and four flatcars in that order. The end flatcar was nearest the crossing and the locomotive was at the opposite end of the train. The locomotive had been backing into track No. 4 in a northerly direction and had been picking up the boxcars and flatcars. Just prior to the accident, the engineer had moved the locomotive forward to "stretch" the train, i.e. to ensure that the couplings were secure. At the time of "stretching" the train, the flatcar at the end of the switch train was an empty log flatcar approximately four feet south of the crossing in question.

Because of the curve in the track the engineer, who sat on the west side of the locomotive, could not see the crossing. Three train crewmen each with lanterns emitting a white light, were utilized to relay signals to the engineer to move the train forward or backward as the situation required. They were all stationed on the west side of the track. Sanders, the foreman of the switch crew, was positioned between five and ten feet north of the crossing. Meyers, another switchman acting as engine follower, was positioned near the locomotive in full view of the engineer. Austin, another switchman, was generally midway between Sanders and Meyers in view of both. The movement of the train was controlled by signals from Sanders, the switch foreman, which were relayed through Austin and Meyers to the engineer. Sanders was not visible to the engineer because of the curve in the track.

Sanders, the switch foreman, observing that the crossing was clear gave a "medium back up" signal with his lantern which Austin and Meyers successively relayed to the engineer, who thereupon started backing the train. Immediately after giving the "medium back up" signal but before the train had started to move, Sanders observed decedent driving a forklift in a northerly direction on a roadway parallel to and 48 feet west of the railroad track on which the switch train was located. Decedent turned right toward the crossing at which time Sanders gave a "stop" signal to the train with

his lantern, consisting of a wide, downward, swinging arc of the lantern at waist level. He gave this signal as a precautionary measure because he wanted to let the forklift go across the crossing. Immediately thereafter, Sanders turned and faced decedent and gave him the same "stop" signal with his lantern. The forklift slowed down and almost came to a stop very close to the crossing but proceeded onto the crossing. Thereupon Sanders gave a "washout signal" to the train for an emergency stop consisting of a chest high, rapid, horizontal movement of his lantern back and forth. He was still giving this signal when the end flatcar on the train hit the forklift turning it over and killing decedent instantaneously. Decedent had been looking directly at Sanders during his approach to the crossing.

At the time of the accident the train was moving not more than three or four miles an hour. The forklift was likewise moving very slowly. The crossing and surrounding area was dark and dim. The flatcar was black and unlighted. It emerged from behind a lumber pile generally located in the southwest corner of the crossing. The forklift was equipped with lights on the front similar to headlights on an automobile.

Decedent's wife, as administratrix of his estate, filed a wrongful death action against defendant railroad; alleging negligence proximately causing the accident and decedent's death. Defendant's answer is substantially a general denial coupled with an allegation of contributory negligence on the part of decedent.

The case came on for trial on June 12, 1967, and resulted in a jury verdict and judgment for defendant. After denial of her motion for new trial, plaintiff appeals from the judgment and order denying a new trial.

The issues for review upon this appeal can be summarized as follows:

(1) Did the district court err in disqualifying four prospective jurors on its own motion?

(2) Did the district court commit reversible error in giving four jury instructions?

██ The first issue for review concerns the right of the trial court to disqualify and excuse four prospective jurors after voir dire examination who had not been challenged by counsel for either party to the action. Apparently the basis of the court's action was its concern that these four jurors might be influenced by their direct or indirect associations with the White Pine and Sash Company. Plaintiff argues that this is prejudicial error in that it deprived her of the services of four competent jurors and gave defendant the advantage of exercising its peremptory challenges against other qualified jurors.

Plaintiff cites numerous authorities from other jurisdictions bearing on this question. Suffice it to say that these authorities are not controlling percedent in Montana. The principles behind our statutory law regarding selection of trial juries from the panel of prospective jurors are clearly discernible from previous decisions of this Court. Litigants are not entitled to have their cases tried before any particular jurors selected from the panel; their right is to reject, not select; and litigants' rights are sufficiently protected if they secure a fair and impartial jury drawn in the manner provided by law. State v. Moran, 142 Mont. 423, 384 P.2d 777; State v. Gates, 131 Mont. 78, 307 P.2d 248; State v. Hay, 120 Mont. 573, 194 P.2d 232.

Although there is no specific statutory right of a trial judge to excuse jurors upon voir dire examination who have not been challenged by the litigants, we find no sufficient abuse of discretion to constitute reversible error under the circumstances disclosed in the instant case. Neither party contends that the jury that heard this case was other than fair and impartial.

██ Proceeding to the second issue assigned for review,

plaintiff contends that the court committed error in giving the following jury instruction over her objection:

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence.

"Even if such an accident could have been avoided by the use of greater foresight, caution or skill than was required in the circumstances in the exercise of ordinary care, still, no one may be held liable for injuries resulting from it.

"Bear in mind, however, that if the defendant failed to exercise care, and if that failure was a proximate cause of the accident in question, then, whether or not such conduct was the sole cause, the accident was not unavoidable, and the defense of unavoidability may not be maintained by that defendant.

"Whether or not the accident in question in this case was unavoidable is, of course, a question of fact for your (sic) to determine; and in giving the foregoing instruction I do not imply any opinion or suggestion as to what your finding should be."

This Court has recently held that the giving of an unavoidable accident instruction in any negligence case is error. Graham v. Rolandson, 150 Mont. 270, 435 P.2d 263. This rule therein announced was expressly held nonretroactive. As that rule applies to cases tried after November 30, 1967, it has no application to the instant case. Thus we must look to the law as it existed previously.

The law on "unavoidable accident" instruction as it existed at the time of trial of the instant case was that such instruction may be proper in a limited class of cases if there is sufficient evidentiary foundation to justify an inference that an unavoidable accident occurred (Rodoni v. Hoskin, 138 Mont. 164, 355 P.2d 296), but that the evidentiary foundation is lacking if there is evidence from which the jury could infer negligence

on the part of defendant. Leach v. Great Northern Ry., 139 Mont. 84, 360 P.2d 94. This Court has never approved the use of an unavoidable accident instruction in any case, twice holding it reversible error to give it (Bogovich v. Scandrett, 117 Mont. 341, 158 P.2d 637; Leach v. Great Northern Ry., supra) and three times upholding the trial court's refusal to give it. Tanner v. Smith, 97 Mont. 229, 33 P.2d 547; Jewett v. Gleason, 104 Mont. 63, 65 P.2d 3; Rodoni v. Hoskin, supra.

In the instant case there is evidence from which the jury could infer negligence on the part of the defendant. The trial judge, in effect, so held in denying plaintiff's motion for a directed verdict. Accordingly, the giving of the unavoidable accident instruction is error.

Plaintiff also claims error in the giving of court's instruction No. 13, which reads as follows:

"You are hereby instructed that a person approaching a railway crossing has the responsibility to exercise care and to take reasonable precautions under the circumstances to assure himself, by actual observation, that there is no danger from an approaching train. Any failure to so do would constitute negligence."

The law set forth in this instruction is based upon four Montana cases: George v. Northern Pacific Ry. Co., 59 Mont. 162, 196 P. 869; Hannigan v. Northern Pacific Ry. Co., 142 Mont. 335, 384 P.2d 493; Feeley v. Northern Pacific Railway Company, 9 Cir., 230 F.2d 316; and Rau v. Northern Pacific Ry. Co., 87 Mont. 521, 289 P. 580. These cases are dissimilar as to facts from the instant case and as a consequence, this rule is misleading and incomplete as applied to the evidence here. The thrust of plaintiff's claim of negligence in the instant case is that the lantern signals of the switch foreman who was positioned several feet *north* of the crossing diverted decedent's attention away from the flatcar moving into the crossing from the south, and were interpreted by decedent as a signal to proceed across the crossing.

Under these circumstances, an instruction to the jury that decedent must take reasonable precautions to assure himself, by actual observation, that there is no danger from an approaching train imposed an excessive burden on decedent. Not only does it imply that decedent was not entitled to place any reliance on the acts or omissions of the foreman of the switching crew who was ostensibly guarding the crossing, but it requires decedent to observe the unobservable. In the instant case the approaching flatcar was hidden from view behind lumber stacked alongside the track. Because decedent's view was thus obstructed, the instruction is tantamount to forbidding him to enter the crossing at all except at his peril. The instruction is an incorrect statement of the law under the evidence in the instant case, making decedent an insurer of his own safety.

We have examined the other two instructions assigned as error by plaintiff and find them to be unobjectionable.

The remaining question, then, is whether the two erroneous jury instructions constitute reversible error requiring a new trial. We must analyze this question in the context of the evidence in the instant case. Broadly speaking, there is no substantial testimonial conflict in this case, but conflicting inferences can be drawn from essentially undisputed testimonial evidence. These conflicting inferences must be resolved by the jury under proper instructions by the court.

Reversible error is error materially affecting the substantial rights of the aggrieved party. Rule 14, M.R.App.-Civ.P. In our view, the combined effect of giving erroneous instructions Nos. 13 and 19 deprived plaintiff of a fair trial. These instructions not only placed a higher duty on decedent than the law requires but also provided defendant with the unwarranted defense of an unavoidable accident. Accordingly, we hold that the district court abused its discretion in refusing plaintiff a new trial.

MR. JUSTICES BONNER and JOHN CONWAY HARRISON, concur.

MR. CHIEF JUSTICE JAMES T. HARRISON (dissenting):

Although I dislike to take a position contrary to the majority of the Court, I cannot concur in all that is said in the foregoing opinion, nor in the result.

Decedent for 9 months had been employed in the lumber company yard, was familiar with the layout of the premises, lighting conditions, the crossing at which the collision occurred, and the fact that a switch train was on the track leading across the crossing immediately before he attempted to cross in front of the backing train. Likewise he knew of the lumber piles alongside the track and that switching operations were carried on at night during the shift that he worked. This is all recounted in the majority opinion. Too, the presence of one of the switching crew at the crossing with a light evidence the immediate presence of the switching train.

Error was asserted in the court giving its instruction No. 13, which reads:

"You are hereby instructed that a person approaching a railway crossing has the responsibility to exercise care and to take reasonable precautions under the circumstances to assure himself, by actual observation, that there is no danger from an approaching train. Any failure to so do would constitute negligence."

I do not believe that this instruction made the decedent an insurer of his own safety and imposed an excessive burden upon him, as the majority hold. The majority says that it required him to observe the unobservable. Is it possible that no longer does one have to stop, look and listen or "to take reasonable precautions under the circumstances"? When one knows that the sight of a switching operation is hidden from his view by a stack of lumber, the presence of which is well known to him, should be nevertheless proceed by reason of what counsel during argument termed as misinterpreted signals?

In my view the giving of this instruction was not error under the facts in this case.

As to the "unavoidable accident" instruction of which complaint was made, in my view it should not have been given but it was not reversible error under the facts present here and could not have misled the jury to the detriment of the plaintiff.

It is my opinion that the verdict reached by this jury was justified by the facts in this cause, that no reversible error appears, and that the judgment entered thereon should be affirmed.

MR. JUSTICE CASTLES, concurs in the above dissent of MR. CHIEF JUSTICE JAMES T. HARRISON.