No. 13160

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

ALEXANDER DZIKOWSKI,

Plaintiff and Appellant,

-vs-

PAUL A. JACOBS, ROBERT WILLIAMS
AND SAMMONS TRUCKING COMPANY,

Defendants and Respondents.

---

Appeal from:   District Court of the Third Judicial District,
Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

For Appellant:

James J. Masar argued, County Attorney, Deer Lodge,
Montana
Olson, White and Olson, Bozeman, Montana

For Respondents:

Corette, Smith and Dean, Butte, Montana
R. D. Corette, Jr. argued, Butte, Montana
John Larson appeared, Butte, Montana

---

Submitted:   May 25, 1976

Decided: AUG 11 1976

Filed: AUG 11 1976

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered in a personal injury action tried before the district court, Powell County, Hon. Robert J. Boyd presiding. Judgment was entered on a jury verdict absolving defendants of liability in connection with a car-truck collision.

The personal injury action arose from these facts: On February 19, 1973, Alexander Dzikowski, while driving a 1962 Pontiac north on U.S. Highway 10 between Warm Springs State Hospital and Galen State Hospital, was involved in a collision with a semi truck and trailer. The semi was driven by Paul Jacobs, owned by Robert D. Williams, and under lease to Sammons Trucking Company.

The collision occurred approximately one mile south of the main turnoff to Galen State Hospital at an intersection where a county gravel road joins U.S. Highway 10. The record reveals these pertinent facts concerning this intersection and the immediate vicinity: U.S. Highway 10 in this area is straight. There are no highway department markings or signs indicating an intersection with a gravel road. In the intersection itself and for approximately a mile in either direction, the highway contains a broken yellow median line. Also, that on the day of the accident the highway was bare and dry.

The collision occurred as Jacobs, who had been following Dzikowski's car for some time, attempted to pass at the same time Dzikowski began executing a left turn onto the gravel road. Jacobs' semi hit the driver's side of Dzikowski's car with both vehicles proceeding off the highway into the barrow pit. When the two vehicles came to rest, a load of steel I-beams fell off the trailer onto the car causing serious injuries to Dzikowski.

As a result of the accident, Dzikowski brought an action

against Paul Jacobs, Robert Williams and Sammons Trucking Company for medical expenses, property damage, loss of earnings, and general damages. The basis of Dzikowski's complaint was the alleged negligence of Jacobs in attempting to pass within a public intersection.

Following the dismissal of Sammons Trucking Company as a party defendant, the case was tried before a jury. The jury returned a verdict in favor of defendants. Dzikowski's motion for a new trial was denied, and this appeal followed.

Two issues are presented for review:

(1) Did the district court commit reversible error by refusing plaintiff's offered instructions No. 11 and No. 12 on passing at a public intersection?

(2) Did the district court commit reversible error by instructing the jury on the issue of contributory negligence?

Plaintiff contends the district court erred in not giving plaintiff's offered instructions Nos. 11 and 12 which read:

> "Instruction No. 11. You are instructed that no vehicle shall at any time be driven to the left side of the roadway under the following conditions:
>
> "(2) when approaching within one hundred (100) feet of or traversing any intersection or railroad grade crossing."

> "Instruction No. 12. You are instructed that an intersection within the meaning of Section 32-2156, R.C.M. 1947, is formed by the joining of two ways publicly maintained, which are open to vehicular traffic."

Specifically citing section 32-2156(a)(2), R.C.M. 1947, and Leach v. Great Northern Railway Co., 139 Mont. 84, 94, 360 P.2d 94, plaintiff argues that these were proper instructions given the fact that defendant Jacobs attempted to pass within the intersection of two publicly maintained vehicular ways. As additional support for his position, plaintiff relies principally on Rader

v. Nicholls, 140 Mont. 459, 373 P.2d 312, and Gammel v. Dees, 159 Mont. 461, 498 P.2d 1204.

This Court finds no merit in plaintiff's contention and finds Rader and Gammel, cited by plaintiff, to be distinguishable from the instant case.

Section 32-2156(a)(2), R.C.M. 1947, states:

"No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

" * * *

"(2) When approaching within one hundred (100) feet of or traversing any intersection or railroad grade crossing * * *."

In Leach this Court defined an intersection:

"An intersection, within the meaning of section 32-2156, R.C.M. 1947, is formed by the joining of two ways publicly maintained which are open to the public for vehicular travel."

However plaintiff's exclusive reliance on section 32-2156(a)(2), and its interpretation in Leach is misplaced, in light of two additional facts present in this case. The record reveals the intersection in question had no signs marking it as such to warn against passing. Additionally, within the intersection and for some distance on either side, U.S. Highway 10 displayed a broken yellow median line, indicating a passing zone. Thus the directive of section 32-2156(a)(2), and the markings on U.S. Highway 10 at the intersection are in direct conflict. The question becomes, which takes precedence.

This Court answered this very question in Faucette v. Christensen, 145 Mont. 28, 36, 37, 400 P.2d 883, where, in a similar fact situation, a car attempting to pass within an intersection marked for passing, struck the left turning car in front of it. In Faucette the Court noted that sections 32-2133 and 32-2134, R.C.M. 1947, vested in the Montana Department of

- 4 -

Highways the authority to adopt a system of traffic control devices and to discretionarily place them on state highways as a means of regulating, warning and guiding traffic thereon. In addition, the Court recognized the obedience which such traffic control devices commanded by virtue of section 32-2136, R.C.M. 1947. In Faucette we harmonized the conflicting statutory sections:

> " * * * we hold that the prohibited intersection for passing under section 32-2156, is that intersection marked by the highway commission as authorized and adopted as heretofore described. Such reasoning gives meaning to all of the statutes heretofore cited and to regulations adopted thereunder.
>
> " * * *
>
> "In the instant situation, a driver can follow the directions of markings and signs, and in doing so is not in violation of section 32-2156."

The Court affirmed this position in Graveley v. Springer, 145 Mont. 486, 402 P.2d 41.

Plaintiff cites Rader and Gammel in an apparent effort to place the Faucette rule in doubt. We find both of these cases to be distinguishable from Faucette and thus from the instant case.

Rader involved this Court's affirmance of a nonsuit granted by the district court where the plaintiff collided with the defendant's car while attempting to pass, and defendant was signaling and attempting to execute a left-hand turn onto an intersecting county road. To distinguish Rader, we need merely note that it was decided prior to Faucette.

In Gammel, decided subsequent to Faucette, the defendant was found to be negligent in attempting to pass within an unmarked intersection traversed by a broken yellow center line. However the basis of liability in Gammel was not the fact that the defendant attempted to pass within the intersection but that

- 5 -

he failed to exercise due care in doing so in view of his high rate of speed, lack of audible signal, and ignorance of facts which would have led a reasonable man to proceed with caution.

Since Rader and Gammel are distinguishable, the rule established in Faucette and reiterated in Graveley is controlling in the disposition of the issue before us. Therefore offered Instructions No. 11 and No. 12 were properly refused by the district court.

Plaintiff next contends there was no evidence of any negligence on plaintiff's part which might have contributed to the proximate cause of the accident and consequently, the instruction given to the jury on contributory negligence was not proper. Specifically, plaintiff claimed he did everything necessary to make a legal and safe turn at the intersection, including turning on his left turn signal.

From examination of the record we do not agree with plaintiff's contention.

The basic dispute here, as it concerns contributory negligence, centers around whether plaintiff's left turn signal was in fact on immediately prior to the accident. If it was not, the issue of contributory negligence was properly raised. Section 32-2167, R.C.M. 1947, requires a turn signal to be given for at least 100 feet immediately prior to turning at an intersection. Under the facts of this case, failure to comply with this statutory section could properly be considered in determining the proximate cause of the accident. On the other hand, if the turn signal was on, an instruction on contributory negligence would not be proper since under that fact situation, defendant Jacobs would be charged with seeing that which he should have seen, had he looked. See: O'Brien v. Great Northern Railroad Company, 148 Mont. 429, 421 P.2d 710; Jimison v. United States,

- 6 -

267 F.Supp. 674; Monforton v. Northern Pacific Ry., 138 Mont. 191, 355 P.2d 501. Thus, if plaintiff did in fact signal for a left turn, defendant's act of passing could properly be held to be the proximate cause of the accident under the Faucette rule, as interpreted in Gammel heretofore discussed.

The record reveals that plaintiff testified he began signaling for a left turn approximately 400 yards before the intersection. Defendant testified that at no time did he see a turn signal on plaintiff's car prior to the accident. Patrolman Bernard Barton, the highway patrolman who investigated the accident, stated he saw the left blinker on and testified the wrecker driver eventually shut it off. On the basis of such testimony, the weight of the evidence would tend to lean heavily in plaintiff's favor. However, a closer examination of Patrolman Barton's testimony casts some doubt. First on cross-examination, this exchange occurred:

> "Q. With regard to the scene of the accident, you testified with regard to turn signals on Mr. Dzikowski car-- A. Yes.
>
> "Q. --I think that you said that they were on at some point? A. At the time I seen them they were on and this was like I said after the victim had been removed and started into the investigation." (Emphasis supplied.)

This testimony was repeated shortly thereafter:

> "Q. When you got out of the patrol car you did then see the car? A. Yes, after I advanced a little bit and more or less headed for the unit I seen it then.
>
> "Q. When you first observed the car and walking up to it you didn't see any blinking lights on at that time? A. I don't recall seeing them, I may-- the first recollection I have is later on." (Emphasis supplied.)

On redirect, the following questions and answers are noted:

> "Q. And, I believe you testified that when you first observed the accident did you observe the car when you first arrived there? A. No I did not.

"Q. And why was that? A. It was on account of the truck of the side from where I had stopped my car.

"Q. And, how did you approach the automobile from where you stopped? A. From the rear in a direct line from the patrol car.

"Q. From the rear of the automobile? A. Yes." (Emphasis supplied.)

The fact that patrolman Barton walked right past the rear of plaintiff's car immediately after arriving at the accident scene and yet did not see any flashing of the rear left turn signal, coupled with the fact that a flashing turn signal was noticed after the somewhat prolonged efforts to extricate the plaintiff could lead a jury to believe the left turn signal was not in fact functioning until after the accident. Such a determination would not be unreasonable in view of the possibility the very act of removing plaintiff could have activated the turn signal.

Our duty here is not to determine whether the turn signal was in fact on but rather, we may only determine whether sufficient evidence existed to warrant an instruction to the jury on contributory negligence. We have held in the past that where inferences to be drawn from evidence as to whether the plaintiff exercised due care are open to different conclusions by reasonable men, the issue of contributory negligence is one for the jury. Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801; Shields v. Murray, 156 Mont. 493, 481 P.2d 680; Allen v. Moore,___Mont.___, 538 P.2d 1352, 32 St.Rep. 478.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____

_____
Justices

_____
Hon. Gordon Bennett, District Judge, sitting in place of Mr. Justice James T. Harrison. - 8 -

Mr. Justice John Conway Harrison dissenting:

I dissent.

_____
Justice