ALONZO BECKS, APPELLEE, V. ARNOLD SCHUSTER, APPELLANT.
48 N. W. 2d 67

Filed May 22, 1951.   No. 32972.

*Jack, Vette & Elliott,* for appellant.

*B. W. Stewart,* and *Adams, Adams & Adams,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Alonzo Becks to recover property damage resulting from a collision between his automobile and the automobile of the defendant Arnold Schuster which occurred in a highway intersection, and a cross-action by the defendant against the plaintiff for property damage. The case was tried to a jury resulting in a verdict in favor of the plaintiff. Judgment was entered thereon. Upon the overruling of the defendant's motion for a new trial, the defendant appeals.

The parties stipulated in the district court that the case be tried upon the original pleadings as filed in the county court. The parties also stipulated the amount of property damage to the plaintiff's automobile and to the defendant's automobile.

The pleadings, insofar as necessary to relate here, are in substance as follows.

The plaintiff, by his petition, alleged that the proximate cause of the collision was the negligence of the defendant in the operation of his automobile in the following particulars: He drove his automobile at a high and dangerous rate of speed; failed to maintain a lookout for the plaintiff's automobile then operating in the intersection of the highways here involved; failed to see the automobile being operated by the plaintiff, or if he did see it, continued to drive in disregard of the knowledge thus acquired; failed to have his automobile under reasonable and proper control in approaching an intersection; did not stop his automobile before it collided with the automobile operated by the plaintiff; failed to turn his automobile away from the automobile being operated by the plaintiff or from the path of the plaintiff's automobile; failed to yield the right-of-way to the plaintiff who, being first in the intersection, was entitled thereto; and failed to take into consideration the rights of the plaintiff in the intersection.

The cross-petition of the defendant alleged that the

proximate cause of the accident was the negligence of the plaintiff in the following particulars: Plaintiff attempted to make a "U" or hairpin turn onto the road on which the defendant was driving without ascertaining whether or not such road was occupied and without looking for approaching vehicles and particularly for the vehicle operated by the defendant; failed to give any signal of his intention to turn onto the road on which the defendant was operating his automobile; drove his automobile immediately into the path of the defendant's car when by the exercise of reasonable prudence he could have ascertained that the defendant's car was proceeding south on the highway into which the plaintiff was negotiating a left turn; failed to stop his automobile before leaving the road on which he was traveling and entering onto the road on which the defendant was traveling; failed to yield the right-of-way to the defendant who was traveling in a straight line on the right-hand side of the road; and failed to have his car under reasonable and proper control or do any act to avoid the collision between the automobiles.

We briefly describe the highways, the junctions, and intersections involved so that the issues raised on this appeal may be better comprehended.

State Highways Nos. 3 and 4 running east from Beatrice are combined, 35 feet wide, and consist of blacktop paving. Eight miles east of Beatrice highway No. 3 turns in a northeasterly direction and highway No. 4 turns in a southeasterly direction, and both highways connect with a north-south gravel highway 32 feet in width. A road which continues east from highways Nos. 3 and 4 combined intersects between the point where highway No. 3 turns to the northeast and highway No. 4 to the southeast. Along the east side of the north-south highway is a bank and a ditch. Where the east and west road intersects the north-south highway there is a knoll or rise. There is a culvert at the point where the east-west road intersects the north-south highway

on the south line of that intersection. The north-south highway is level. There are no stop signs at any of the points heretofore described where highways Nos. 3 and 4 intersect the north-south highway, or at the point where the road continues east and intersects the north-south highway. Two hundred feet north of the point where highway No. 3 intersects the north-south road there is a sign designating the junction.

For convenience we refer to the parties as designated in the district court.

The plaintiff, Alonzo Becks, at the time of the accident owned a 1949 Chevrolet coach in good mechanical condition. Arnold Schuster, the defendant, at that time was the owner of a 1949 Ford club coupe in good mechanical condition. Both automobiles were fully equipped with lights. During the evening of February 28, 1950, at about 8 o'clock, the plaintiff, with his mother, his brother Algernon, and his sister went for a ride. Algernon was sitting to the right of the plaintiff who was driving. They proceeded east from Beatrice on highways Nos. 3 and 4 combined. When the plaintiff arrived at the point where highway No. 4 turns to the southeast, he drove in that direction. As he proceeded around the curve he looked in all directions to see if any cars were coming. He observed a car coming from the north some distance away, and believed that this car would slow down. After he had proceeded around the curve going southeast, he made a turn to the north onto the north-south highway. He had crossed to the east side of that highway facing in a northeasterly direction when he observed the car coming from the north "leap" over the knoll at a high rate of speed. The driver of the car coming from the north, the defendant, was proceeding straight south and swerved his car to the left or east into the left front of the plaintiff's car. The plaintiff testified that at the time of the impact his car was on the east side of the north-south highway, headed northeast. The defendant's car, in ap-

proaching from the north, did not stop at any time prior to the time of impact. The plaintiff also testified that a car coming from the north could see the headlights of his car at all times after he had proceeded to the southeast on highway No. 4 and into it to go around the curve and at the point where he had turned to the left or north on the north-south highway. However, he did not know what distance the driver of a car coming from the north could see his headlights. The plaintiff could see the headlights of the defendant's car as it came from the north. When he saw the defendant's car coming from the north it was north of the north junction, that is the junction north of the east-west road. He looked again to the north as he was getting ready to go across the intersection of highway No. 4 and the north-south highway. At that time the defendant's car was just north of the north junction. He saw the defendant's car at all times, and the defendant was in full sight as he proceeded onto the north-south highway. He believed the defendant would slow down for the junction and curves, but he did not. As a result the collision occurred. Previous to the accident as the plaintiff started to turn southeast on highway No. 4, he saw a car coming from the north in front of the defendant's car. It turned on highway No. 3 west to Beatrice. He saw no other cars.

Algernon Becks testified that when the plaintiff was making the turn on highway No. 4 he slowed his car down. Algernon looked to the north and saw the defendant's car and a car in front of it which turned west on highway No. 3 to Beatrice. The plaintiff's car proceeded to a point close to the south junction. Algernon looked to the north again and saw the defendant's car slowing down from a high rate of speed. When plaintiff's car entered the intersection of the north-south highway the defendant's car was entering the intersection where the east-west road intersects the north-south road. He saw the defendant's car close to the

top of the knoll. Plaintiff's car was then in the west lane of the north-south highway, headed east and traveling at a rate of speed of five miles an hour. When the plaintiff's car was about halfway into the intersection the plaintiff started to speed up his car. He crossed to the east lane of the north-south highway and applied his brakes. The defendant's car, proceeding at a high rate of speed, veered to the left, or over into the east lane of the highway, striking the left front wheel of the plaintiff's car.

The defendant Schuster testified that he was traveling south on the north-south highway at the rate of speed of 45 miles an hour which he maintained just preceding the accident. There are no stop signs, slow signs, or warning signs at the south intersection where highway No. 4 turns into the north-south highway. After he had proceeded a little south of the top of the knoll he saw the plaintiff's car barely moving at a rate of speed of between two and five miles an hour. He first saw the plaintiff's car when he was 200 or 150 feet from the point of impact. When he was about 100 feet north of the plaintiff's car he applied his brakes. The plaintiff's car was making a "U" turn to the left, or north, on the north-south highway. No hand signals were given by the plaintiff, and the defendant testified he could have seen one if it had been given. He was not blinded by the lights on the plaintiff's car for the reason that the lights were facing mostly to the east. The defendant applied his brakes and turned his car to the left, or east, in an endeavor to avoid hitting the plaintiff's car. He believed that the plaintiff's car would stop and he could pass around it to the east, but the car kept on coming ahead, turned to the north directly in front of his car, and the collision occurred. The accident happened entirely in the west lane of the north-south highway.

After the collision the front wheels of the defendant's car were in the ditch on the east side of the north-south

road. The front end of his car was pointing slightly southeast, the back end northwest. The plaintiff's car was pointing slightly southwest and the back northeast, and was about in the center of the north-south highway.

Where highway No. 4 turns to the south on the north-south highway a short distance to the north is a culvert, the distance not shown by the record. There is a ditch 2½ or 3 feet deep which extends north from the culvert to where the east-west road intersects the north-south highway. Measurements taken by a witness show the defendant's car was 31 feet south of this culvert, and there was a distance of 28 feet between the back end of the defendant's car and the back end of the plaintiff's car which was facing south and west. Algernon testified that the collision occurred about 15 feet south of this culvert, and the defendant could have proceeded south in the west lane of the north-south highway and would have avoided the plaintiff's car which was in the east lane thereof. A witness testified that it would have been difficult for the defendant to have gone in between where the plaintiff's car stood after the accident and the west end of this culvert. Witnesses testified that there was broken glass near the center of the north-south highway, 5 or 10 feet south of the culvert. One witness testified that the broken glass was 25 feet or so south of the culvert. There was some glass east of the center of the north-south highway.

The defendant assigns as error that the trial court erred in basing its instruction upon the law applicable only to ordinary intersections. While conceding that section 39-741, R. S. 1943, is broad enough to cover a "T" or "Y" junction, some question arises as to whether or not such section covers the south junction here involved, that is, where highway No. 4 turns to the southeast and joints the north-south highway. This section provides: "* * * (7) The term 'intersection' includes the area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of

two or more highways which join one another at an angle, whether or not one such highway crosses the other."

In Nygaard v. Stull, 146 Neb. 736, 21 N. W. 2d 595, this court said: "The rules of the road fixed by section 39-741, R. S. 1943, extend to all public highways, however created, and to all roads not public highways if used for travel by the public."

The trial court did not err in instructing the jury on this phase of the case. The joinder of highway No. 4 with the north-south highway constitutes an intersection within the meaning of section 39-741, R. S. 1943. See, also, Koutsky v. Grabowski, 150 Neb. 508, 34 N. W. 2d 893.

The defendant contends that the trial court failed to instruct the jury on the defendant's theory of the case, and by failing to do so committed prejudicial error. See, Stoffel v. Metcalfe Construction Co., 145 Neb. 450, 17 N. W. 2d 3; Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609.

The defendant, in his cross-petition which we repeat in part, charges the plaintiff with negligence which he claims constituted the direct and proximate cause of the accident, that is, the plaintiff, in making a left turn from highway No. 4 onto the north-south highway did so without ascertaining whether or not such highway was occupied and without looking for appoaching vehicles that might be thereon, and in failing to signal his intention to turn to the left. As a result, he drove his automobile directly into the path of the defendant's automobile and failed to yield the right-of-way to the defendant.

This assignment of error is based on the instructions given by the trial court to the jury. In determining it we make reference to certain of the facts and analyze the instructions in conjunction therewith as to their correctness. It is true as stated by the defendant, in summarizing the defendant's cross-petition in instruction

No. 1, the trial court made no reference to the defendant's claimed right-of-way pleaded therein to the effect that the plaintiff failed to yield the right-of-way to the defendant, however, as will subsequently appear, the trial court properly instructed on the issue of the right-of-way.

Instruction No. 12 told the jury that no person shall turn a vehicle from a direct course upon a highway unless such movement can be made with reasonable safety and then only after giving an appropriate signal in the event that any other vehicle may be affected by such movement. The instruction then relates the manner of giving the signal to make the turn and the distance during which the signal should be made before turning. In the second paragraph of the instruction the court told the jury: "If you find that these provisions of the law or any of them were violated by the plaintiff, you are instructed that such violation was not in and of itself negligence but a circumstance which you may take into consideration in determining whether or not the plaintiff was guilty of negligence."

The defendant contends the record shows that no signal to make the left turn was given by the plaintiff, and the court should have instructed the jury, as a matter of law, that the plaintiff violated the provision of the statute regarding a signal for a left turn, and should not have left the matter to the jury to determine whether or not such a signal was given. This instruction merely informed the jury what the law was on the failure to give a left turn signal as required by the statute, and how such failure to give the signal should be considered. We find no prejudicial error in this instruction.

Instruction No. 13 told the jury that motor vehicles traveling on public highways shall give the right-of-way to vehicles approaching along intersecting highways from the right and shall have the right-of-way over those approaching from the left, when said ve-

hicles shall reach the intersection at approximately the same time, and in all other cases the vehicle reaching said intersection first shall have the right-of-way.

Instruction No. 14 told the jury that where two motorists approach an intersection at or about the same time, the driver approaching from the right has the right-of-way and he may ordinarily proceed to cross, having a legal right to assume that his right-of-way will be respected by the other driver; but if the situation is such as to indicate to the mind of an ordinarily prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of yielding his right-of-way, and his failure to do so under such conditions would be evidence of negligence on his part.

Defendant's contention is that instructions Nos. 13 and 14 are prejudicially erroneous for the following reason: The plaintiff's petition does not allege that he was halfway into the north-south highway or the intersection when his car was struck by the defendant's car, nor does it allege the defendant was negligent in failing to yield the right-of-way to the plaintiff who was entitled thereto because he was approaching the intersection from the right, therefore, the jury was permitted to and could disregard the plaintiff's claimed right-of-way as pleaded, and give him the right-of-way on the basis that he was approaching the intersection from the right. The petition does allege that the plaintiff entered the intersection and was approaching halfway across that portion of the highway running north and south.

The plaintiff charged the defendant with negligence which was the proximate cause of the accident as heretofore set out. Evidence was adduced from which the jury could find that the plaintiff had proceeded across the intersection of highway No. 4 and the north-south highway and was on the east side thereof facing north when the defendant's car veered to the left, or east, and struck the left front wheel of the plaintiff's car. There

is also evidence that, at the time the defendant saw the plaintiff's car then partly in the intersection, he was 150 feet north thereof. The plaintiff's evidence is to the effect that the defendant was 188 feet north of the intersection when the plaintiff was proceeding across it. There is evidence that when the plaintiff approached the intersection from the right the defendant was from a quarter to a half mile north of the place where highway No. 4 intersects the north-south highway. We conclude the instructions complained of are not prejudicially erroneous, but conform substantially to the evidence and the pleadings.

The defendant contends that section 39-751, R. S. 1943, rather than 39-728, R. S. 1943, is applicable to the type of intersection here involved, and also, section 39-750, R. S. 1943, is applicable. The defendant's cross-petition does not sufficiently plead facts sufficient to disclose in what manner the cited sections are applicable, and section 39-728, R. S. 1943, would be inapplicable. The rule is that the instructions given by the trial court should be confined to the issues presented by the pleadings and the evidence. See, Citizens Nat. Bank v. Sporn, 115 Neb. 875, 215 N. W. 120; Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597; Ellis v. Union P. R. R. Co., 148 Neb. 515, 27 N. W. 2d 921.

We believe the trial court followed the rule in the cited authorities in instructing the jury.

When a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. If he fails to see a car which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law. If he fails to see an automobile not shown to be in a favored position, the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is a jury question. See, Elliott

v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617; Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367; Gorman v. Dalgas, 151 Neb. 1, 36 N. W. 2d 561.

Where two motorists approach an intersection at or about the same time, the driver approaching from the right has the right-of-way, and he may ordinarily proceed to cross, having a legal right to assume that his right-of-way will be respected by the other driver, but if the situation is such as to indicate to the mind of an ordinarily careful and prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent an accident, even to the extent of waiving his right-of-way. See, Gorman v. Dalgas, *supra*, Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596.

Where different minds may reasonably draw different conclusions or inferences from the evidence or there is a conflict in the evidence as to whether or not negligence or contributory negligence has been established, the question is for the jury. Hamilton v. Omaha & Council Bluffs St. Ry. Co., 152 Neb. 328, 41 N. W. 2d 139; Pahl v. Sprague, *supra*.

We believe the record presented questions of negligence on the part of either of the parties, or both, for a jury to determine under proper instructions.

The judgment on the verdict is affirmed.

AFFIRMED.