## No. 19,382.

RONNIE L. DAVENPORT *v.* STATE OF ARIZONA, EX REL.
THE INDUSTRIAL COMMISSION OF ARIZONA.
(361 P. [2d] 973)

Decided May 8, 1961.

Messrs. WORMWOOD, O'DELL AND WOLVINGTON, for
plaintiff in error.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE parties will be referred to as they appeared in the trial court where the plaintiff in error was defendant and the State of Arizona was the plaintiff. The action was instituted to recover payments made by the Arizona Workmen's Compensation and Accident Fund to Lewis O. Vermillion, who was injured in the course of his employment and who assigned his claim to the plaintiff. The injuries were incurred in a bus-automobile collision which occurred December 2, 1956, in Luna County, New Mexico. Vermillion was the bus driver for the American Bus Lines and was then traveling west on Highway 70-80 from El Paso, Texas, to Tucson, Arizona. The impact happened while the bus was engaged in passing defendant's passenger car and when the latter made a sudden left turn to enter a dead end highway which intersects Highway 70-80 from a southerly direction. The front of the bus collided with the left side of the passenger car. In a trial to the court judgment was entered in favor of the plaintiff in the stipulated amount of $11,301.18.

The evidence discloses that Vermillion had been a driver for American Trailways since January 2, 1939, on the route between El Paso, Texas, and Los Angeles, California. On the day of the accident the road was dry and the weather was fair. Vermillion testified that a few miles east of the point of the collision defendant's car came out of a filling station on the north side of the road and pulled into the lane in front of the bus. He followed this vehicle for some time traveling at a speed of 55 miles per hour, and when it appeared that the bus was overtaking the car Vermillion swung to the south side

of the highway for the purpose of passing. There was a broken white line on the pavement indicating that it was permissible to pass. According to Vermillion's further testimony, the defendant had been driving on the extreme right side of the road kicking up dust and gravel. Just as the bus was almost even with defendant's car, the latter started to turn to the left. The first indication Vermillion had that the car was going to turn was when it actually did so. He tried to stop and turn down the side road, but was unable to accomplish this without risk of overturning the bus, and so he thereupon straightened out and went off into a ditch. The two cars came together off the main highway on the side road. The bus left skid marks but the passenger car did not. Vermillion observed no signal from the car before the turn was made. The road was straight and flat for several miles in both directions.

Testimony of a passenger who was sitting in the front seat of the bus was to the effect that as they were overtaking the car the bus driver honked the horn as he started to pass. She also stated that when the horn was first sounded there would have been sufficient time for the bus driver to have avoided the accident had a turn signal been given at that time and that the brake lights of the passenger car came on when it started to turn; that it was possible that the left turn signal was also on at that time but that she did not see it.

The road commissioner of the State of New Mexico testified by deposition. In locating and identifying the side road into which the passenger car had attempted to turn, he stated that although this road is carried on the inventory in the county as a county road it is actually the private property of the El Paso Natural Gas Company and that at the time of the collision it was in fact a private road; that the county does not maintain it nor assert right to ownership of it; that although there had been a service road there prior to the time that the property was acquired by the El Paso Natural Gas Company

that it had been surfaced by the gas company and that the county had not contributed to the paving. During the time when the road was used by farmers it was not maintained by the county. He further said that although the gas company has since stated that they do not want the highway traveled that it has never been closed to the public. A large overhead arch sign of El Paso Natural Gas Company is at the entrance. The access road leads to a booster station of the gas company.

Various statutes of the State of New Mexico were introduced. These define highways, authorize the highway commission to adopt a uniform system of signs, govern passing and turning signals. They also require a signal of intention to turn to be given during a space of not less than 100 feet prior to the turn. These signals can be given by means of a mechanical device or by hand and arm signal. An intersection is defined as follows:

"(a) The area embraced within the prolongation or connection of the lateral curb lines, or if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

A further provision relied on by defendant reads:

"Section 64-18-13 (2) 'No vehicle shall at any time be driven to the left side of the roadway under the following conditions:

\* \* \*

" '2. When approaching within 100 feet of or traversing any intersection or railroad grade crossing.' "

Defendant testified that he was traveling about 50 to 60 miles per hour just prior to the collision and that he intended to make a left turn at the point where the road connects with the highway. He saw the bus in his rear view mirror prior to the accident. It was then about 300 feet behind him and his car was approximately 200 feet

from the point of impact. After observing the bus, he did not see it again until immediately prior to the impact when it was a few feet away from his car. His speed had been reduced to 25 to 30 miles per hour. He had pulled the turn signal down for a left turn at the time that he first saw the bus. After the impact his car went in a westerly direction into the borrow pit and finally came to rest some 135 feet from the point of impact. He stated that he did not hear the bus' horn and that he did not recall getting so far to the right that his wheels kicked up gravel or dirt. After the accident the right hand turn signal was on and the lever was broken off. Passengers in the defendant's car corroborated his statement that the turn signal was on prior to the collision, although they were unable to state how long it had been on prior to the collision.

At the conclusion of all of the testimony, the trial court made informal findings, holding defendant negligent for attempting to make a turn, knowing that the bus was trailing him, without first ascertaining its position. The court observed that a question existed as to how long the defendant's signal lights were turned on, but nevertheless held that it was negligent for the defendant to turn without ascertaining whether the bus was attempting to pass.

In seeking reversal, defendant contends that the court erred:

1. In holding that the defendant was guilty of negligence.

2. In failing to find that Vermillion's conduct constituted contributory negligence.

Defendant's reasoning in urging that the evidence failed to show negligence on his part is that the undisputed evidence establishes that the turn signal light was on and defendant's testimony that it was on for a full 300 feet is not specifically controverted. On that basis, it is said that the defendant was in full compliance with his common law and statutory duties. His second argu-

ment proceeds on the assumption that the signal light was on but that the bus driver ignored it and proceeded to pass, thus violating the statute prohibiting passing at a road intersection.

I.

 Defendant predicates his theory that he was free from negligence on the testimony of his witnesses that the left turn light or blinker was on prior to his turn and the collision. It appears to us, however, that there was competent evidence establishing that this turn light was not blinking in time to effectively warn the vehicle passing that a turn was intended. Vermillion so testified and the reasonable inference from the passenger's testimony is the same. This latter witness said that the *brake* light came on just prior to the start of the turn, but even accepting the postulate that the turn light was on some time before the actual turn, this could not justify the failure of defendant, who had knowledge that the bus was trailing him, from his obligation to check the position of the bus before turning sharply to the left. In 5 Am. Jur. 677, *Automobiles,* §323, appears a succinct statement of the applicable rule:

"The general rule that the driver of an automobile must exercise ordinary care applies to his action in turning from his course. It is the duty of the operator of a motor vehicle, prior to changing his course and turning, to exercise such caution as traffic conditions demand, to give vehicles following him notice of his intention, or to bring his car to a standstill, if necessary, until he is afforded a free passage. The driver of the car ahead has no right, merely because he is in the lead and traveling at the maximum statutory rate, to assume that no one will attempt to pass him."

See also 57 A.L.R. 1106 and 24 A.L.R. 513.

It could be concluded by the trier of the facts that the decision to make the left turn was a sudden one and that it was made without considering the likelihood that the bus would be simultaneously overtaking the car.

Therefore, the trial court's determination that defendant failed to take necessary precautions, both statutory and common law, appear to us as proper in the circumstances.

## II.

■ The only basis for the argument that Vermillion was guilty of contributory negligence is the assertion that he violated the statutory prohibition against passing. It is contended that the area in question was in law a highway intersection and that when Vermillion passed at this place he was guilty of negligence *per se*. It seems clear, however, that this was not an intersection within the meaning of the New Mexico statute. The markings along the highway were such as to allow passing and the road was an access to private property rather than a public highway. The statutory demand contemplates that it be an intersection of genuine highways in order for the prohibition against passing to operate.

The decision in *Wilson v. Stroh,* 121 Colo. 411, 216 P. (2d) 999, is somewhat similar. In that case the trial court held a passing vehicle to be guilty of contributory negligence as a matter of law as a result of overtaking in a highway intersection. The intersection in that case was a bona fide one but the highway was multi-laned. Because of this fact the court held the statute to be inapplicable and in effect ruled that the turning vehicle was guilty of negligence growing out of its unforeseeable left turn from the outside lane. The reasoning of the court is pertinent and instructive in the present analysis. It reads:

"Defendant driver was attempting to make a U-turn in front of plaintiff, admittedly without giving any warning signal of such a turn. Judging from his actions in first turning his truck off to the right in preparing to make a long sweeping left-hand turn, plaintiff was clearly justified in thinking that defendant was turning off the highway to the right, and he was not bound to anticipate that he would negligently suddenly make a left-

hand turn without warning. It is not disputed that plaintiff had given defendant driver all signals customarily used in indicating that he was about to pass defendants' truck. Under our interpretation of the statute in connection with the admitted facts, this is not a case of contemporaneous negligence of both parties, and the trial court was right in the first instance in finding that defendants' negligence was the proximate cause of the accident, and deciding the issues joined in plaintiff's favor. Accordingly, the judgment is reversed and the cause remanded to the trial court with directions to reinstate its first judgment in favor of plaintiff."

There is even less reason for applying the statute to the facts in the case at bar than there was in *Wilson v. Stroh,* supra. Here the undisputed evidence shows the alleged highway to be a private roadway for access. It thus seems clear that the anti-pass statute cannot apply.

■ Considered from the standpoint of non-statutory negligence, the result is the same. Under the circumstances Vermillion was not required to anticipate defendant's turn, and although there might have been sufficient evidence to justify the court's treatment of the issue of contributory negligence as one of fact, the court was nevertheless fully justified in resolving as it did this disputed question.

It follows that the findings and conclusions of the trial court that the defendant was guilty of negligence and that the plaintiff was free of contributory negligence were proper.

The judgment is affirmed.

Mr. Chief Justice Hall and Mr. Justice Moore concur.