447 P.2d 409

TRI-STATE NATIONAL BANK, a national banking corporation, Plaintiff-Respondent,

v.

WESTERN GATEWAY STORAGE COM-PANY, Defendant-Appellant,

and

Bobby Dean Jensen and Connie Jensen, husband and wife, Defendants.

No. 10210.

Supreme Court of Idaho.

Nov. 25, 1968.

544

Whittier & McDougall, Pocatello, for appellant.

Baum, Peterson & Kugler, Pocatello, for defendants.

McDevitt & McDevitt, Pocatello, for respondent.

McQUADE, Justice.

This appeal is from an order granting summary judgment under Idaho R.Civ. P. 56 to respondent Tri-State National Bank against appellant Western Gateway Storage Company and defendants Bobby Dean and Connie Jensen in the amount of $31,897.44.

Western Gateway Storage Co. (hereafter referred to as Western) is a Utah corporation qualified to do a public warehousing business in Idaho. On March 17, 1964, Western entered into a warehousing contract with Bobby Dean and Connie Jensen doing business as Bear Lake Lumber Company (hereafter referred to as Bear Lake) in Paris, Idaho. The warehousing contract obligated Western to

"do any and all things necessary to the establishing and maintaining of * * * [a] field warehouse in conformity with law [and particularly to] place its bonded representatives [or] watchmen in charge of the premises and of the commodities stored [and to] exercise full charge of the premises and the contents thereof and issue its warehouse receipts on the goods * * *."

Western therefore leased from Bear Lake a certain portion of Bear Lake's premises and converted it into a field warehouse for the storage of logs and lumber produced by Bear Lake. As custodians of this warehouse during the period of its operation from March, 1964, to May, 1966, Western successively designated three employees of Bear Lake.

During this same period, the Jensens financed their operations through an arrangement with Tri-State National Bank (hereafter referred to as the Bank). Jensen delivered various notes to the Bank, and the Bank lent sums of money to Jensen on the security of warehouse receipts issued by Western for Bear Lake's lumber. The amounts loaned were fixed by reference to the value of the logs and lumber evidenced by these warehouse receipts. The value of sawlogs was established as thirty-five dollars per thousand board feet, while the value of lumber was set at forty-five dollars per thousand board feet. The Bank agreed to loan approximately seventy per cent of these values, or twenty-five dollars per thousand board feet of sawlogs and thirty-five dollars per thousand board feet of lumber. By May 1, 1966, Jensen's outstanding indebtedness to the Bank amounted to $34,135.37 and was secured by warehouse receipts evidencing 979,000 board feet of sawlogs and 21,000 board feet of lumber.

It was at this point that Jensen notified the Bank of a shortage of sawlogs and lumber in Western's field warehouse. There were only some 35,000 board feet of sawlogs in the warehouse. The depositions of the field warehouse custodians hired by Western, one Wayne Johnson and one Donald Masterson, indicate that they issued receipts for lumber and requests to Western for warehouse receipts in the amounts and at the times dictated by their primary employer, Mr. Jensen. These custodians apparently never understood their function and were never checked upon by Western. They issued receipts for logs and lumber with only the most cursory checking, if any, of whether logs and lumber were actually deposited in the field warehouse. They released logs and lumber to Mr. Jensen without requiring the surrender of warehouse receipts.

On May 13, 1966, the Bank demanded that Western deliver the logs and lumber evidenced by its warehouse receipts or their value, but Western failed to do so. Thereupon the Bank brought suit against Western and the Jensens for Jensens' outstanding indebtedness plus interest and attorney fees. At the pretrial conference, promissory notes of Jensen were admitted into evidence for all purposes without objection, and warehouse receipts of Western were admitted into evidence for all purposes without objection, excepting those receipts numbered 1302, 1372, 1385 and 1393 (exhibits 17, 20, 26 and 29). The exclusion of these receipts eliminated from the Bank's security 85,000 board feet of sawlogs and 21,000 board feet of lumber, leaving a total security of receipts evidencing 894,000 board feet of sawlogs. We note that the district court's finding number III is arithmetically inaccurate in stating that the receipts evidenced 914,000 board feet of sawlogs and 21,000 board feet of lumber. Multiplying the established loan value of sawlogs of thirty-five dollars per thousand board feet and the amount of security relied upon by the Bank of 894,000 board feet gives a total of $31,290.00 of value evidenced by Western's warehouse receipts. The notes admitted showed an indebtedness of $26,065.00, and the Bank claimed interest of $3,792.05 and attorney fees of $2,900.00. Upon these documents, the pleadings, answers to interrogatories, depositions and supporting affidavits, the Bank moved for summary judgment under Idaho R.Civ.P. 56. Appellant Western submitted opposing affidavits and moved to amend its answer and to file a cross claim against the Jensens and a third party complaint against its custodians. The district court did not pass upon this latter motion, for it granted the Bank's motion for summary judgment based solely upon the notes and warehouse receipts introduced at the pretrial conference.

Before considering appellant Western's assignments of error, we note that defendants Bobby Dean and Connie Jensen did not appeal. Therefore the judgment against them is final.

All of the errors assigned by appellant Western go essentially to the question of whether or not there was presented a "genuine issue as to any material fact" under Idaho R.Civ.P. 56(c). Only if the evidence showed that no such issue was presented was summary judgment proper. Upon a review of the record and briefs, and after hearing argument, we have concluded that no "genuine issue as to any material fact" was presented, the case became one for resolution as a matter of law under Idaho R.Civ.P. 56.

Idaho R.Civ.P. 56(a) permits a claimant to move for summary judgment at any time after the expiration of twenty days from the service of process upon the adverse party. Idaho R.Civ.P. 56(c) then provides in part that the

> "judgment sought shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

It merely restates the rule to say in effect that a summary judgment proceeding is not a substitute for the trial of factual issues which are genuine and material to the case.[1] The purpose of the rule is to allow the court to pierce the pleadings in order to eliminate groundless denials and paper issues in cases which would end in directed verdicts or other rulings of law.[2] The court determines whether there are genuine issues for determination, and in

---

1. See Otts v. Brough, 90 Idaho 124, 130, 409 P.2d 95, 98 (1965); Deshazer v. Tompkins, 89 Idaho 347, 353, 404 P.2d 604, 607 (1965); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 414, 353 P.2d 657, 659 (1960).

2. James, Civil Procedure § 6.18 (1965); Wright, Federal Courts § 99 (1963); Barron & Holtzoff, Federal Practice and Procedure §§ 1231–1247 (Wright ed. 1958).

so doing resolves any doubts against the moving party.[3]

■ For this purpose, Idaho R.Civ.P. 56(e) provides that

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein * * *."

The rule furthermore provides that

> "an adverse party may not rest upon mere allegations or denials of his pleadings, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be."

Idaho R.Civ.P. 56(g) contains sanctions against affidavits presented in bad faith or solely for the purpose of delay. It has been stated "that Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts."[4] Summary judgment will be upheld when opposing affidavits are based only on "unsupported suspicions."[5]

■ Under Fed.R.Civ.P. 56, which is substantially similar to the Idaho rule, there have been two views of the summary judgment device, emanating primarily from the second circuit. Judge Clark advocated a broader power in the district courts to grant summary judgment.[6] Judges Jerome Frank and Learned Hand espoused a narrower power and held that the granting of summary judgment would be error where there is the "slightest doubt" as to the facts.[7] However, the rule itself, in permitting summary judgment where "no *genuine* issue of any *material* fact" appears, plainly requires more to forestall summary judgment than the raising of the "slightest doubt" as to the facts. Furthermore, the 1963 amendment to Fed.R.Civ. P. 56(e), which is paralleled by the last two sentences of Idaho R.Civ.P. 56(e), indicates that the effective use of the summary judgment device should not be impaired by an unduly narrow reading of the rule.[8]

■ Turning to the facts of the present case, the Idaho law applicable to warehousemen at the time the events here occurred provided in pertinent part that

> "[a] warehouseman shall be liable to the holder of a receipt, issued by him or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the issuing of warehouse receipts, for damages caused by the nonexistence of the goods * * *."

3. E. S. Harper Co. v. General Insurance Co. of America, 91 Idaho 767, 773, 430 P.2d 658, 664 (1967); Jack v. Fillmore, 85 Idaho 36, 42, 375 P.2d 321, 324 (1962); In Re Kilgore's Estate, 84 Idaho 226, 234–235, 370 P.2d 512, 517 (1962).

4. Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945).

5. Griffin v. Griffin, 327 U.S. 220, 236, 66 S.Ct. 556, 90 L.Ed. 635 (1946); see also Avrick v. Rockmont Envelope Co., 155 F.2d 568 at 571 (10th Cir. 1946) ("flimsy or transparent charges or allegations" insufficient to oppose summary judgment).

6. See, e. g. Madeirense Do Brasil, S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399 at 405 (2nd Cir.1945) and California Apparel Creators v. Wieder of California,

162 F.2d 893 at 900–902, 174 A.L.R. 481 (2nd Cir. 1947).

7. See Doehler Metal Furniture Co. v. United States, 149 F.2d 130 at 135 (2nd Cir. 1945), and Arnstein v. Porter, 154 F.2d 464 at 469 (2nd Cir. 1946).

8. See Advisory Committee's note to Federal Rule 56(e) and the annotation to Idaho Rule 56(e), cf. Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963 (II), 77 Harv.L.Rev. 801, 825–828 (1964); and Dressler v. M V Sandpiper, 331 F.2d 130 (2nd Cir. 1964) wherein Judge Kaufman spoke for the second circuit and rejected an allegation of usury offered to forestall summary judgment but supported only by an attorney's affidavit not based on personal knowledge or concrete particulars under Admiralty Rule 58(e), which is a "carbon copy" of Federal Rule 56(e).

It is this provision which creates Western's liability to the Bank. Factual issues unrelated to the obligations created by this provision of law are not "material" issues under Idaho R.Civ.P. 56(c). Into this category fall the matters asserted by Western relating to possible fraudulent acts by Jensen, dereliction of duty by custodians Masterson and Johnson, or possible collusion between Jensen and the custodians. Those matters are immaterial to Western's liability to the Bank under I.C. § 69–120. Therefore the district court in its determination to grant summary judgment under Idaho R.Civ.P. 56(c) properly rejected assertions contained in Western's proffered cross-claim against Jensen and third party complaint against the custodians.

■ The main issue material to the liability created by I.C. § 69–120 which Western asserts was raised by the record in this case has to do with the possibility that the Bank lent money to Jensen with knowledge that there was a severe shortage of logs and lumber in the field warehouse. Western went so far as to assert there was a conspiracy between the Bank and Jensen to use Western "as an underwriter." This assertion appeared in many forms: as an answer to interrogatories, as a claimed defense, as an affirmative defense, and as part of affidavits. However, we have searched the record in vain to find a single concrete particular asserted as personal knowledge by someone competent to assert it which might support such an allegation. Yet that is what Idaho R.Civ. P. 56(e) requires to show there is a genuine need for trial. Mere denials,[9] assertions of what "might have [been]," of what one has "been told" or "advised," of matters not stated from personal knowledge, of numerous legal conclusions (especially by laymen), and of what one hopes "will be shown at trial" are not enough to create a "genuine issue" under the rule. The district court therefore properly rejected this assertion as well in its determination to grant summary judgment to the Bank.

■■ Appellant Western argues that an issue relating to the valuation of sawlogs was raised by the record and thus assigns as error the court's valuation of sawlogs at thirty-five dollars per thousand board feet. Western admitted in answers to interrogatories and in the affidavit of the president of Western that it knew the Bank would advance twenty-five dollars per thousand board feet of logs. Western therefore argues that it should be responsible only to that extent. However, Western as warehouseman is liable not only for the amounts advanced but rather is liable as a converter for the value of the logs evidenced by the receipts.[10] Through Western's haphazard operation of its field warehouse, the security for the Bank's loans which was represented by warehouse receipts has disappeared. Affidavits stating what the Bank loaned on the logs do not meet and contradict affidavits setting out the value of the logs and therefore do not raise an issue of fact as to valuation.[11] The Bank's affiants stated that the market value of sawlogs at Paris, Idaho, was thirty-five dollars per thousand board feet and that this value was agreed upon by the Bank and Bear Lake. Western in its answer denied this was the proper value, but the rule indicates that mere denials are not sufficient to raise an issue of fact sufficient to prevent summary judgment.[12] Nowhere in the record is it stated by anyone competent to testify from his personal knowledge about the value of sawlogs was anything but thirty-five dollars per thousand board feet. The district court there-

9. E. S. Harper Co. v. General Insurance Co. of America, 91 Idaho 767 at 772, 430 P.2d 658 at 663 (1967).

10. I.C. § 69–120; 56 Am.Jur. Warehouses §§ 34 and 210 (1947); 93 C.J.S. Warehousemen & Safe Depositaries §§ 27(c) (1) and 50 (1956).

11. Compare the somewhat analogous situation in the *Madeirense* case, note 6, supra, at pp. 403–405.

12. See Idaho R.Civ.P. 56(e).

fore properly found that there was no genuine issue of fact as to the value of sawlogs evidenced by Western's warehouse receipts.

Authorities cited by Western in support of its position that there were genuine issues of fact raised are all distinguishable on their particular facts, as must often be the case with a rule so dependent upon facts as Idaho R.Civ.P. 56(c). The case of Clayton v. James B. Clow & Sons [13] involved complex claims to ownership of stock in a closely held corporation and required a determination of whether actions of a corporate officer involved conflict of interest and breach of fiduciary duty to a shareholder. A further issue related to the intent of a testator expressed by the terms of a testamentary trust. These factual issues required a full trial to provide information on all the circumstances. The present case involves only the strict liability of a warehouseman according to the tenor of his warehouse receipts.

United States v. Pellagrino [14] is distinguishable because it was a proceeding to revoke the defendant's citizenship in which the government bore the burden of proving its case by "clear, unequivocal and convincing" evidence.

Klein v. Lionel Corp.[15] and Whitaker v. Graves [16] applied the standard under Federal Rule 56(c) which required that the moving party show there was "no issue" of fact or that there was not the "slightest doubt" as to the facts. We have noted that this test is unduly restrictive under the rule, especially since the 1963 amendment which is paralleled in the Idaho rule, and probably is no longer followed by the second circuit which originated the test. For these reasons, appellant Western's authority is not persuasive.

▪ Since the correct amount of logs evidenced by warehouse receipts admitted

at the pretrial conference was 894,000 board feet, the value of the security for which Western is liable was reduced to $31,290.00. Since the judgment was in excess of this amount, there must be a modification of the judgment in the sum of $607.44. As so modified the judgment is affirmed.

Costs to respondent.

SMITH, C. J., and TAYLOR, McFADDEN and SPEAR, JJ., concur.

13. 154 F.Supp. 108 (N.D.Ill.1957).

14. 155 F.Supp. 726 (S.D.N.Y.1957).

15. 18 F.R.D. 184 (D.Del.1955). This decision is also based upon Frederick Hart & Co. v. Recordgraph Corp., 169

F.2d 580, the leading case in a line of 3rd Cir. decisions expressly rejected by the 1963 amendment of rule 56.

16. 18 F.R.D. 246 (S.D.N.Y.1955).