456 P.2d 789

David VINCEN and Pamela Vincen, husband and wife, Plaintiffs-Respondents,

v.

Michael E. LAZARUS, Defendant-Appellant.

Glenn J. RHODES, Jr., Arthur McKay, Rex W. McKay and Lloyd McKay, Plaintiffs-Respondents,

v.

Michael E. LAZARUS, Defendant-Appellant.

No. 10277.

Supreme Court of Idaho.

July 3, 1969.

Furchner & Anderson, Blackfoot, for appellant.

Clemons, Skiles & Green, Boise, for appellees.

McQUADE, Justice.

This opinion treats together two actions which were consolidated for disposition, since they both arose out of the same accident. During the late afternoon of July 23, 1965, plaintiff-respondent David Vincen (Vincen) accompanied by his wife, was driving his employer's 1955 GMC truck northerly on Highway 28, a two-lane highway, in Lemhi County, Idaho, and near the old mining town of Gilmore. The truck was a flatbed and was loaded with an Ingersoll-Rand rock drill weighing 5,000 to 6,000 lbs. It was daylight, the weather was clear, the highway was dry, level and straight for several miles in each direction and there were no sight obstructions. Both Mr. and Mrs. Vincen testified that the speed of the truck was 50 to 55 miles per hour.

At the same time and place defendant-appellant Lazarus was driving his Jeep station wagon in a northerly direction on Highway 28 and was ahead of plaintiffs' truck. He was pulling a small teardrop trailer which was equipped with red brake and left-right turn signals all of which were electrical and were in good operating condition. Lazarus had missed a turn off of Highway 28 and had slowed down for several miles to a speed 15 to 20 miles per hour and was looking for a place on either side of the highway to turn around and reverse his direction. As Lazarus approached the place where the accident occurred, but before he actually saw the intersecting road, he observed plaintiffs' truck some distance behind him in the right hand or northbound lane of travel. Because of the trailer, defendant was able to utilize only the side rear view mirror and not the in-

side rear view mirror. About ten seconds later, according to Lazarus' testimony, Lazarus put on his left turn signal and after an additional three to five seconds began his left turn into the two-rut Hilltop Mine Road.

The Vincens testified that they observed the Jeep and trailer ahead of them in their own lane of traffic traveling very slowly and that they were rapidly overtaking it. Vincen states that he observed the highway in both directions, turned on his left turn signal about a city block behind defendant, pulled into the left lane, and during the city block proceeded to overtake defendant's vehicle. As plaintiffs' truck was about 15 to 20 feet from the rear of the trailer the Vincens saw for the first time a red light flash on the trailer, and the Jeep commenced its left turn. Vincen did not sound his horn, turn, or attempt to apply his brakes until the moment of the impact which was in the left lane of travel. The left front of Lazarus' Jeep hit the right rear double wheels of Vincen's truck. The Jeep and trailer came·to rest still on the highway and the truck rolled several times and came to rest between 300 and 400 feet from the point of impact and facing a southerly direction on the westerly side of the highway.

The characteristics of the roads involved where the accident occurred are best ascertainable from plaintiffs' photographic exhibit no. 1:

There were no official intersection or turnoff warning signs at the place of collision. There was a rather small sign indicating that a mine existed in the direction of the two-rut road. This sign was put up by a private party. Even appellant Lazarus could not testify that he saw this sign before he turned. Vincen had driven Highway 28 several times before the accident and knew generally that some minor dirt roads entered the highway, but he had no particular familiarity with the Hilltop Mine Road. Vincen's vantage point from the truck was somewhat better than that of Lazarus, but Vincen did not see the road as he approached to pass Lazarus. The public generally was not prevented from using Hilltop Mine Road, but according to appellant's witnesses on cross-examination, neither the State, County, nor the Bureau of Land Management maintains the road.

There was some testimony that after the accident certain conversation took place between Vincen and Lazarus. Vincen asked why Lazarus turned. Lazarus replied that he thought Vincen was further back. Lazarus asked whether Vincen saw his signal, and Vincen replied that he saw a red light too late to do anything to avoid the collision.

On these facts, the district court denied Lazarus' motion for summary judgment and, after trial to the court, awarded judgment to Mr. and Mrs. Vincen for lost wages, hospital and medical expenses, and general damages totaling $9,969.15 and to Mr. Vincen's employer, Rhodes & McKay,

for the loss of the truck and damage to the drill it carried totaling $8,307.42. Defendant Lazarus' appeal presents but one ultimate issue, whether or not the court below correctly concluded that Vincen was not contributorily negligent. No error is assigned to the finding of negligence on the part of Lazarus or to the amounts of damages awarded.

■ Appellant Lazarus first argues that the court erred in denying his motion for summary judgment under Idaho R.Civ.P. 56 for the reason that the pleadings, depositions and affidavit showed no genuine issues of material fact and that respondent Vincen was contributorily negligent as a matter of law. The first basis for this argument is that, since the complaints allege that the accident occurred at an intersection of two roads and the answers admit such fact, there is no question that Vincen attempted to overtake Lazarus at an intersection contrary to I.C. § 49–713(a) (2), and this violation of the statute constitutes negligence per se. We cannot accept this line of reasoning, however, because, as respondents contend, the pleadings use the word "intersection" in its generic sense only. The legal question as to whether the intersection of the two roads constitutes an intersection as defined by statute and as used in the statutory rules of the road still remain, and its answer depends in part upon a material issue of fact, namely, whether or not in this case the Hilltop Mine Road was publicly maintained. The depositions and affidavit failed to foreclose this question of fact.

The second basis for appellant's argument that his motion for summary judgment should have been granted is that Vincen's failure to sound his horn as he attempted to overtake Lazarus violated I.C. § 49–834(a) requiring a driver to sound his horn "when reasonably necessary to insure safe operation" and that this violation constituted negligence per se. Neither can we accept this line of reasoning, however, because whether or not such action was "reasonably necessary" is peculiarly dependent upon all of the factual circumstances of the accident. The depositions of Mr. and Mrs. Vincen and the affidavit of Lazarus disclose several areas of factual uncertainty which would bear upon the legal question of whether or not the sounding of Vincen's horn was "reasonably necessary." First, how fast was each of the parties traveling? Mr. Vincen stated on his deposition that he was traveling fifty miles per hour and that Lazarus appeared to be traveling thirty miles per hour. Mr. Lazarus stated in his affidavit that he was traveling "very slowly" or fifteen to twenty miles per hour and that Vincen appeared to be traveling in excess of forty-five miles per hour. Second, how far behind Lazarus was Vincen when he drove the truck into the opposite lane to pass Lazarus? Mr. and Mrs. Vincen stated on their depositions only that Lazarus was ahead of them, while Lazarus stated in his affidavit that, though he could not estimate the distance, Vincen appeared to be far enough behind to allow ample opportunity to make a left turn. Third, and most important, precisely when did Lazarus put on his turn signal or brake light as an indication that something was about to happen? Mr. and Mrs. Vincen stated on deposition that they first saw a flash of light when they were within fifteen feet of the rear of Lazarus' car or trailer. Lazarus stated in his affidavit that he turned his left-hand signal on three to five seconds before the collision. In view of these factual issues and the legal standard to which they were material, the trial court could not have granted summary judgment to Lazarus.

■ Appellant also asserts that, since Lazarus presented his affidavit as to the circumstances of the collision while the Vincens presented no counter-affidavits, the court should have granted Lazarus' motion for summary judgment pursuant to the last two sentences of Idaho R.Civ.P. 56 (e), which require that opposition to a motion for summary judgment must be as specific and as detailed as the facts urged in support of the motion. This argument misconstrues paragraph (e) of the rule because it fails to consider the remainder of the rule. The portion of Idaho R.Civ.P. 56(e) upon which appellant relies itself

states that, "[w]hen a motion for summary judgment is made and supported *as provided in this rule;*" the opposition must be equally specific. (Emphasis added). Idaho R.Civ.P. 56(b) provides that a motion for summary judgment for a defending party may be made "with or without supporting affidavits." Idaho R.Civ.P. 56(c) provides that summary judgment shall be rendered "if the pleadings, *depositions,* and admissions on file, together with the affidavits, *if any,* show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis added). Nowhere does the rule require the filing of counter-affidavits merely because the motion may be supported by affidavits. What is critical is that support for and opposition to a motion for summary judgment be based upon factual details of equal specificity regardless of whether the source is depositions or affidavits.

In the instant case, the opposition by the Vincens to the motion for summary judgment was based upon specific details contained in their depositions already on file. Lazarus of necessity filed an affidavit in support of his motion under Idaho R.Civ.P. 56 precisely because he had at no time previously placed any facts on record as to his version of the circumstances of the collision. As previously indicated, this affidavit and the depositions of the Vincens disclosed genuine issues of material fact. To have required additional affidavits by the Vincens restating the same facts would have been to engage in a useless procedure not required by the rule in this case. Thus, Lazarus failed to show the lack of genuine issues of material fact and that he was entitled to judgment as a matter of law, which was his burden.[1]

▮ Turning then to one of the issues presented by the parties to the court below,

the court concluded that the intersection of Hilltop Mine Road with Highway 28 was not to be regarded as an intersection within the meaning of I.C. § 49–713(a)(2). That statute provides that:

"No vehicle shall at any time be driven to the left side of the *roadway* under the following conditions:

\*   \*   \*   \*   \*   \*

"(2) When approaching within 100 feet of or traversing any *intersection* \* \* \*;" (Emphasis added).

I.C. § 49–101(u) defines the term "highway" as

"every way or place of whatever nature open to the use of the public as a matter of right for the purposes of vehicular travel *which is maintained by the state of Idaho or some taxing subdivision or unit thereof or the federal govenment or an agency thereof.*" (Emphasis added.)

I.C. § 49–514(a) defines the terms "street or highway" as "[t]he entire width between the boundary lines of every way *publicly mantained* when any part thereof is open to the use of the public for purposes of vehicular travel." (Emphasis added). I.C. § 49–514(c) defines the term "roadway" as "[t]hat *portion of a highway* improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder. \* \* \*" (Emphasis added). I.C. § 49–515(a) defines the term "intersection" as

"[t]he area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines *of the roadways of two (2) highways* which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different *highways* joining at any other

---

1.  Idaho R.Civ.P. 56; Tri-State Nat. Bank v. Western Gateway Storage Co., 92 Idaho 543, 447 P.2d 409, 411–412 (1968); Otts v. Brough, 90 Idaho 124, 130, 409 P.2d 95, 98 (1965); Deshazer v. Tompkins, 89 Idaho 347, 353, 404 P.2d 604, 607 (1965); Clontz v. Fortner, 88 Idaho 355, 359-360,

399 P.2d 949, 950–951 (1965) (deposition considered in opposition to motion for summary judgment but found factually insufficient to raise genuine issues); Anderton v. Waddell, 86 Idaho 220, 223-224, 384 P.2d 675, 676 (1963).

angle may come in conflict." (Emphasis added).

By these statutory provisions, the legislature has carefully and specifically indicated that a "roadway" is the normal traveling portion of a "highway," that a "highway" must be "publicly maintained," and therefore that the intersection of some road not publicly maintained with a highway cannot be a statutory "intersection" within the meaning of I.C. § 49–713(a)(2). The evidence in the case at bar showed clearly that Hilltop Mine Road was not publicly maintained. Therefore it formed no statutory intersection with Highway 28.

This legislative judgment is supported by both judicial authority and common sense. Several cases from surrounding jurisdictions have held, under statutory provisions not materially different from Idaho's, that there is no statutory intersection formed when one of the intersecting roads is not publicly maintained. Thus, it has been held that a driver is not guilty of negligence per se when he attempts to overtake another driver but collides with him when the other driver attempts to turn onto an obscure private road.[2]

We find the foregoing cases persuasive, while the cases cited by appellant for the proposition that a statutory intersection existed in this case are either inapposite or distinguishable. In Woodman v. Knight,[3] the intersection of Highway 30 and Alfresco Road apparently was assumed by the parties and the Court to be a statutory intersection, and thus, the issue here presented was not raised. Likewise in Kidd v. Gardner Associated, Inc.,[4] the parties and the court assumed the existence of a statutory intersection. Bale v. Perryman[5] plainly involved two county roads and presented no issue as to the existence of a statutory intersection. In Howard v. Missman,[6] the statutory violation consisted of crossing over a marked solid line into a no passing zone rather than passing at an intersection. The case of Crossler v. Safeway Stores, Inc.,[7] and its two Nebraska progeny, Nygaard v. Stull[8] and Becks v. Schuster,[9] all were decided under the then extant statutory definitions of highways which did not contain public maintenance as an essential element but rather required only public use.[10] Finally, in Florke v. Peterson,[11] the decision was reached on the basis of legal excuse, with no issue presented as to the existence of a statutory intersection, while Reese v. National Surety Corp.[12] plainly involved publicly maintained roads.

The Idaho statutory provisions and the judicial decisions pertinent to the factual

2. Edwards v. Twain Lumber Co., 123 Cal. App.2d 675, 267 P.2d 347 (1954) (no intersection formed where obscure private road entered highway at a point unmarked by warning signs; Cal. Vehicle Code §§ 81, 82, 86 and 530 (Deering 1935) construed); Leach v. Great Northern Railway Company, 139 Mont. 84, 360 P.2d 94 (1961) (no intersection formed where a road not shown to be publicly maintained entered highway; Mont.Rev.Codes Ann.1947 §§ 32–2150, 32–2115(a) and 32–2114 as amended by § 14, ch. 263, Laws of 1955 construed); cf. Rader v. Nicholls, 140 Mont. 459, 373 P.2d 312 (1962) (intersection found where two county-maintained roads crossed) and Faucette v. Christensen, 145 Mont. 28, 400 P.2d 883 (1965) (no statutory intersection exists unless so marked by highway department); Trojanovich v. Marshall, 95 Ariz. 145, 388 P.2d 149 (1963); Davenport v. State of Arizona ex rel. In-

dustrial Commission, 146 Colo. 401, 361 P.2d 973 (1961) (1953 Comp.N.M. § 64–18–13(a)(2) construed); Moore v. Armstrong, 67 N.M. 350, 355 P.2d 284 (1960); Douglas v. Gigandet, 8 Utah 2d 245, 332 P.2d 932 (1958).

3. 85 Idaho 453, 380 P.2d 222 (1963).

4. 92 Idaho 548, 447 P.2d 414 (1968).

5. 85 Idaho 435, 380 P.2d 501 (1963).

6. 81 Idaho 82, 337 P.2d 592 (1959).

7. 51 Idaho 413, 6 P.2d 151, 80 A.L.R. 463 (1931).

8. 146 Neb. 736, 21 N.W.2d 595 (1946).

9. 154 Neb. 360, 48 N.W.2d 67 (1951).

10. See R.R.S.1943 § 39–741 and Idaho S.L. 1927, ch. 260, § 1(n).

11. 245 Iowa 1031, 65 N.W.2d 372 (1954).

12. 224 S.C. 489, 80 S.E.2d 47 (1954).

situation presented in the case at bar are based upon the recognition that every unmarked and naturally obscure road, not publicly maintained, which joins a highway carrying fast-moving traffic cannot realistically be viewed as forming a statutory intersection and as creating negligence per se in all drivers who might overtake another at that point. Such a view would ignore the fact that often it is the driver attempting to turn onto such roads who engages in the extraordinary or unexpected conduct. Such a view would always prevent recovery by any passing motorist no matter how suddenly another motorist might decide without warning to turn off the highway, for the passing motorist would always be in violation of a statute. That rule would be entirely untenable. For these reasons, we conclude that respondent Vincen was not guilty of negligence per se under I.C. § 49–713(a) (2).

■ The question remains, however, whether the district court correctly concluded that respondent Vincen was in no way contributorily negligent. The court found and concluded in its memorandum decision, which was stipulated by the parties as constituting the findings of fact and conclusions of law of the court, that

> "at the time * * * [appellant Lazarus] put on his left turn signal, the * * * [respondent] David Vincen was starting to pass the * * * [appellant] on the left and caught a flash of the signal (* * * [Vincen] did not know if it was a turn signal or a flash of the brake lights). At the time * * * [respondent Vincen] saw the flash of light it was too late to avoid the accident."

The court further found and concluded that neither Vincen's speed, which was somewhat over the permitted limit for a truck, nor his failure to sound his horn was a contributing proximate cause of the accident. As to the qualified requirement under I.C. § 49–834(a) of sounding his horn, the court found that

> "[t]here was no evidence of action on the part of Lazarus to indicate the necessity for sounding a warning except when Vincen saw the flash of light while in the act of passing, and then it appears that it would have been too late. The sole proximate cause of this accident was * * * [appellant's] negligence * * *."

These findings embody a prior finding that the first signal given by appellant Lazarus, whether it was first given three to five seconds before Lazarus turned or at the time when Vincen was only fifteen feet behind Lazarus, failed to supply any effective opportunity to avoid a collision. This finding is supported by the competent testimony of Mr. and Mrs. Vincen. Therefore this finding of fact by the court and the other findings of fact based thereon are not clearly erroneous and will not be disturbed on appeal.[13] Likewise, the conclusions of the trial court concerning proximate cause are supported by evidence in the record and will not be disturbed on appeal.[14]

As previously noted, I.C. § 49–834(a) lays down no blanket mandatory requirement of sounding an audible warning when passing; nor do we read such a requirement into I.C. § 49–710(b). The Woodman case [15] is not persuasive here for the reason that there the court apparently presumed an audible warning was in fact "reasonably necessary" in the circumstances, while in the situation at bar the Court below found such a warning was not required.

For these reasons, the judgment of the district court is affirmed. Costs to respondents.

SHEPARD and SPEAR, JJ., concur.

13. Idaho R.Civ.P. 52(a) ; cf. King v. MacDonald, 90 Idaho 272, 280, 410 P.2d 969, 973 (1965).

14. Lindhartsen v. Myler, 91 Idaho 269, 273, 420 P.2d 259, 263 (1966).

15. n. 3, supra.

McFADDEN, Chief Justice (concurring specially).

In his argument before this court appellant asserts that the trial court erred in denying his motion for summary judgment for two reasons. This court determines, however, that the denial of the motion for summary judgment was proper inasmuch as certain factual issues existed bearing upon the legal questions presented. With this conclusion I have no disagreement and therefore I concur in the foregoing opinion.

However, serious doubt regarding whether the denial of appellant's motion was properly before this court for consideration is presented by the conclusions reached by a majority of jurisdictions which have considered whether the denial of a motion for summary judgment can be reviewed in conjunction with an appeal from a final judgment. The majority rule is that the denial of such motion cannot be so reviewed on appeal from a final judgment. Boyles Galvanizing & Plating Co. v. Hartford Acc. & Indem. Co., 372 F.2d 310 (10th Cir. 1967); John Hancock Mut. Life Ins. Co. v. Kraft, 200 F.2d 952 (2nd Cir. 1953); Dutton v. Cities Service Defense Corp., 197 F.2d 458 (8th Cir. 1952); Drittel v. Friedman, 154 F.2d 653 (2nd Cir. 1946); Bell v. Harmon, 284 S.W.2d 812 (Ky.1955); Home Indemnity Co. v. Reynolds & Co., 38 Ill.App.2d 358, 187 N.E.2d 274 (1963); Garver v. First Nat. Bank, 406 S.W.2d 797 (Tex.Civ.App.1966); Ackermann v. Vordenbaum, 403 S.W.2d 362, 15 A.L.R.3d 893 (Tex.1966). See also 15 A.L.R.3d 899 at 922.

Two basic reasons are given for the courts' refusal to review a denial of a motion for summary judgment. Perhaps the most persuasive reason was stated by the Illinois Appellate Court in Home Indemnity Co. v. Reynolds & Co., supra:

"* * * To deny a review seems to be unjust. But to grant it * * * would be unjust to the party that was victorious at the trial, which won judgment after the evidence was more completely presented, where cross-examination played its part and where witnesses were seen and appraised.

"The greater injustice would be to the party which would be deprived of the jury verdict. Otherwise, a decision based on less evidence would prevail over a verdict reached on more evidence and judgment would be taken away from the victor and given to the loser despite the victor having the greater weight of evidence. This would defeat the fundamental purpose of judicial inquiry.

"We hold that if a motion for summary judgment is improperly denied the error is not reversible for the result becomes merged in the subsequent trial." 187 N.E.2d at 278.

To the same effect are Bell v. Harmon, supra, and Ackermann v. Vordenbaum, supra.

The second reason for refusing to review the denial of summary judgment was stated by the Kentucky court in Bell v. Harmon, supra:

"The Federal appellate courts have recognized the limited scope of summary judgment procedure, and have consistently cautioned trial courts against granting motions for summary judgment if any doubt exists as to the right of a party to a trial. To hold that there may be a review of the trial court's determination that a party is entitled to a trial would be inconsistent with this admonition to proceed cautiously when granting a summary judgment. It would put the appellate court in the position of trying the question of doubt in the mind of the trial judge. We do not think this would be proper review.

"Our refusal to review an order denying a summary judgment can in no sense prejudice the substantive rights of the party making the motion since he still has the right to establish the merits of his motion upon the trial of the cause. If the contrary were held, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because he had failed to prove his

case fully on an interlocutory motion." 284 S.W.2d at 814.

It is to be noted that the holding in Bell v. Harmon was modified by Gumm v. Combs, 302 S.W.2d 616 (Ky.1951), which held that a denial of summary judgment could be reviewed on appeal from a final judgment if only an issue of law were involved rather than the issue of whether there was a genuine issue of material fact present.

It would seem that if a party were entitled to summary judgment that in most instances he would prevail at trial even though his motion for summary judgment was improperly denied. To reverse the findings of a trial court or the verdict of a jury for the opposing party in order to rectify an alleged mistake on the part of the trial judge in passing upon the motion for summary judgment would in the majority of cases be an injustice to the party who prevailed at trial. The motion for summary judgment is based upon only a written record, which is not fully developed, whereas upon trial, the fact finder, either the court or the jury, bases its determination upon all the facts to be presented and upon the actual testimony of witnesses. Following a trial on the merits, then, the court or jury is in a position to assess the entire record in light of the credibility and demeanor of the witnesses. In such case the sounder rule would appear to be that the party prevailing at trial should be entitled to rely on the result of the trial on the merits.

Issues of law presented by a motion for summary judgment are preserved when the same issues of law are inherent in any judgment rendered.

If for any reason the trial court should determine after trial that the judgment was in error and that the motion for summary judgment should have been granted the court can still rectify the error by granting a judgment notwithstanding the verdict. See I.R.C.P., Rule 50(b)(c).

It is my conclusion that the denial of a motion for summary judgment is not reviewable upon an appeal from a judgment entered after a full trial of the case on its merits. Although the question whether the denial of a motion for summary judgment is reviewable on appeal from a judgment entered after trial on all factual issues was neither raised nor briefed on this appeal, such a serious doubt is presented as to the reviewability of the issue that I felt compelled to discuss it.

DONALDSON, J., concurs in the foregoing specially concurring opinion.